## JOHN S. LEAHY, Appellant, v. MERCANTILE TRUST COMPANY.

### In Banc, December 30, 1922.

1. **PRACTICE: Motion for Judgment on Pleadings: Equivalent to Demurrer: Right to Plead Over.**  Where plaintiff filed a motion for judgment on the pleadings, upon the theory that his petition stated a cause of action and the answer pleaded no defense thereto, and the defendant thereupon filed a motion for judgment upon the pleadings on the theory (a) that the undisputed facts pleaded constituted an absolute defense and (b) that the petition stated no cause of action, and upon defendant's motion being sustained plaintiff made no request to plead further, but permitted judgment to be rendered and then made application for and was allowed an appeal and filed his bill of exceptions, it cannot be ruled that the motions for judgment were in law or fact demurrers, or that a right of plaintiff to plead over still exists.

   *Held*, by ELDER, J., dissenting, with whom WOODSON, C. J., concurs, that a motion for judgment on the pleadings, under such circumstances, performs identically the functions of a demurrer, and the judgment should be reversed and plaintiff given an opportunity, if desired, to reply to defendant's pleas,

and especially on the question whether he, an administrator *pendente lite*, rendered any service to the estate for which he should be compensated.

2. ———: ———: Matter of Exception: Motion for New Trial.   A motion for judgment on the pleadings is not a demurrer, but the action of the court in sustaining it is a matter of exception, and to be preserved for review upon appeal a motion for a new trial must be filed, in which the court's ruling on the motion is assigned as error, and then a bill of exceptions must be filed in which the motion for judgment and the motion for new trial, and an exception to the court's action in denying it, are incorporated, Where plaintiff's motion for judgment upon the pleadings was overruled, and defendant's motion for judgment on the pleadings, filed after plaintiff's motion was filed, was sustained, and plaintiff appealed, without filing any motion for a new trial, nothing can be considered by the appellate court except the record proper, which, in such case, is the petition, answer and judgment.

> *Held*, by ELDER, J., dissenting, with whom WOODSON, C. J., concurs, that a motion for judgment upon the pleadings performs identically the same functions as a demurrer, and under such circumstances no motion for a new trial was necessary; and, besides, in this case, where the real question is whether the petition states a cause of action, the question whether a motion for a new trial was necessary is immaterial.

3. ———: ———: Judgment.   Where a motion for judgment on the pleadings is filed by plaintiff and thereupon a like motion is filed by defendant, a judgment for defendant and dismissing plaintiff's bill is proper, if the petition fails to state a cause of action; and if the petition states a cause of action, and the answer states one or more good defenses thereto, the judgment accords with the pleadings and is proper; for plaintiff's motion admits the truth of all facts well pleaded, and although the petition alleges facts constituting a cause of action the answer may plead other facts which constitute an absolute defense notwithstanding the facts stated in the petition.

4. ADMINISTRATION: Administrator Pendente Lite: Nominal Bond: Jurisdiction: Damages.   The probate court has no jurisdiction to authorize or require the assets of a valuable estate to be turned over to an administrator *pendente lite* upon the giving of a nominal bond, and such an attempt is a fraud upon the law which requires a bond in double the amount of the assets; nor is the administrator *pendente lite*, who files only a nominal bond, legally qualified to demand or take possession of the assets, and the regular administrator or executor can rightfully refuse to turn over the

assets until the administrator *pendente lite* qualifies by giving the bond required by law; and the administrator *pendente lite*, having no right to demand or receive the assets, acquires no cause of action against the regular executor for the statutory commission of five per cent of the moneys received by the regular executor while the contest of the will out of which his appointment arose was pending.

*Held*, by ELDER, J., dissenting, with whom WOODSON, C. J., concurs, that the statute (Sec. 17, R. S. 1919) declaring that the probate court shall take a bond from the person to whom letters of administration are granted in an amount "not less than double the amount of the estate" is directory, and no statute requires the giving of a bond before the administrator enters upon his duties, or makes void his appointment unless he gives the required bond, and a failure to give bond furnishes no basis for an attack upon his title to the office; and where the petition alleged that the probate court appointed plaintiff administrator *pendente lite* and fixed the amount of his bond "for the time being at $10,000, to be increased upon receiving the assets of said estate to $10,000,000, and that thereupon, and on the same day, the plaintiff, as such administrator *pendente lite*, tendered his bond in the sum of $10,000, which was accepted, approved and filed, and thereafter, and on the next day, plaintiff, having arranged for and being then ready, willing and able to give the increased bond of $10,000,000 and having so advised defendant" (the regular executor) "made demand upon defendant for the delivery to him of the personal property belonging to the estate," which allegations are admitted by defendant's motion for judgment on the pleadings, it should be held that plaintiff fully complied with the order of the probate court and the statute, and that he did qualify as administrator *pendente lite*, and was entitled to the possession of the estate, and that defendant wrongfully withheld it from him.

5. ———: ———: **Preservation of Estate.** If it becomes necessary for the preservation of the estate during the time a suit contesting testator's will is pending, the administrator *pendente lite* who properly qualifies may, under an order of the probate court, pay out funds, or even sell real estate, but he can do those things only when they become necessary for the preservation of the estate, and he cannot make distribution of the estate or any part of it, and his appointment ceases as soon as the will contest ends, and if the will is sustained he must turn over the entire assets to the regular executor, and if the will is annulled he must turn them over to a regular administrator when appointed and qualified.

6. ———: ———: **Suit for Compensation: In What Court.** A suit for compensation for services rendered by an administrator *pendente lite* should be brought in the probate court, which has original jurisdiction of the matter, and not in the circuit court; and a petition against the regular executor, filed in the circuit court as an original suit, after the pending will contest has ended, shows on its face a fatal defect. Even in the probate court he cannot have an allowance for services rendered unless distributions have been made, and the allowance must be made by the court, and paid out of the assets of the estate.

*Held*, by ELDER, J., with whom WOODSON, C. J., concurs, that upon the filing of a petition in the circuit court to contest a will the authority of the regular executor is suspended, and when notice that such suit has been filed is brought to the attention of the probate court it becomes its duty to appoint an administrator *pendente lite*, and if the regular executor continues to hold the estate such claim as the executor *pendente lite* may have for commissions allowed and received by the regular executor pending the will contest is a claim against the executor individually, and not against the estate, and consequently the probate court has no jurisdiction to adjudicate the claim.

7. ———: ———: ———: **Against Executor: Money Had and Received.** The administrator *pendente lite* has no claim for services rendered the estate against the executor as an individual, as for money had and received by the regular executor during the time he was wrongfully deprived of the assets of the estate. If he has any claim at all, it is against the estate, and it must take the form of an allowance by the probate court. If the probate court wrongfully made an allowance by commissions to the regular executor which should have been allowed to him, the estate, through the legatees, alone can complain, and he has no cause of action against the executor as an individual for the amount of the wrongful allowance. [ELDER J., and WOODSON, C. J., dissenting.]

8. ———: ———: **Failure to Receive Assets: Course of Procedure.** The remedy of the administrator *pendente lite* for the failure of the regular executor to turn over to him the assets of the estate pending the will contest, is under the statute to sue for possession, if he is qualified to sue for and receive the assets, or to cite the regular executor in the probate court for wrongfully withholding property of the estate.

9. ———: ———: **Allowances to Executor: Judgment.** An allowance of commissions to the regular executor by the probate court is a final judgment; and if an administrator *pendente lite*, appointed

Leahy v. Mercantile Trust Co.

to preserve the estate pending a will contest, stands by and permits the probate court to allow the regular executor five per cent commission on all the assets distributed and the administration to be closed, his right to receive a part of the commissions, or compensation for his services rendered the estate, is finally concluded by said judgment.

10. **RES ADJUDICATA: Binding on Non-Party.** It is not necessary that one be a party to the record to be estopped by a judgment. If he participates in the trial he is estopped by a final judgment therein, and his claim growing out of the matters by it concluded become *res adjudicata*, just as fully as if he had been a party. So that where, upon the application of the contestants of a will, the probate court suspended the testamentary letters issued to defendant as executor and appointed plaintiff administrator *pendente lite*, an appeal was taken from the order to the circuit court, the plaintiff was present and assisted the contestants in the trial in the circuit court, the judgment was against the contestants and in favor of the executor (the defendant in this suit) and the devisees, and the contestants did not appeal, and the plaintiff attempted to appeal, but it was ruled that he could not appeal, because not a party to the record, the judgment of the circuit court was *res adjudicata* on the point that he had never been appointed administrator *pendente lite*, and he is as much bound by said judgment as he would have been had he been a party, and cannot maintain a suit to recover commissions on estate assets that came into the hands of the executor during the time the will contest was pending, brought on the ground that during said time, he was wrongfully deprived of the possession of said assets. [ELDER, J., and WOODSON, C. J., dissenting.]

11. ———: ———: **Collateral Attack: Jurisdiction: Appointment of Administrator Pendente Lite: Appeal.** The probate court has jurisdiction to suspend letters testamentary and to appoint an administrator *pendente lite* to preserve the estate pending the will contest, and when it grants an appeal from its order the circuit court becomes possessed of the subject-matter and its judgment revoking the order, unappealed from, is *res adjudicata* and not subject to collateral attack, although the probate court may have committed error in granting the appeal and the circuit court may have erred in hearing the appeal on its merits.

12. **APPEAL: From Order of Probate Court: Appointment of Administrator Pendente Lite.** From an order of the probate court suspending letters testamentary previously granted to the regular executor and appointing an administrator *pendente lite* to preserve the estate pending a contest of the will, an appeal is authorized by stat-

ute, namely by the ninth and fifteenth clauses of Section 282, declaring that an appeal may be taken from "all orders revoking letters testamentary or of administration" and "in all other cases where there shall be a final decision of any matter arising under the provisions of Article I to XIII, inclusive, of this chapter," and also by the fourth subdivision of Section 2436, which provides that circuit courts shall have appellate jurisdiction from the judgments or orders of probate courts "in all cases not expressly prohibited by law." Such order is a judgment, and the appeal therefrom gave to the circuit court jurisdiction of the subject-matter, and whether it committed error in deciding the question on its merits is immaterial, for having jurisdiction if it wrongfully decided that the probate court had erred in making the order its decision was mere error, which could be corrected only by appeal or writ of error, but there being no writ of error and no appeal by a party to the record its judgment revoking the order of the probate court became final, and the order appointing an administrator *pendente lite* became a nullity, and therefore he has no standing in the circuit court to maintain a suit for commissions upon assets which came into the hands of the regular executor pending the will contest. *Held*, by ELDER, J., with whom WOODSON, C. J., concurs, that the filing of a petition in the circuit court to contest a will *ipso facto* operates to vacate an order of the probate court admitting the will to probate, and automatically suspends the powers and rights of the executor pending the will contest, and makes it mandatory upon the probate court to appoint an administrator *pendente lite*, and these things being true an appeal to the circuit court from the order suspending the executor's letters and appointing a temporary administrator would be a useless and ineffectual thing, and from such order the executor has no right of appeal, and the circuit court cannot assume jurisdiction to set aside the order.

13. ADMINISTRATION: Will Contest: Administrator Pendente Lite: Amount of Bond. The grant of letters and the execution of the statutory bond are parts of one and the same transaction; and notwithstanding an order of the probate court suspending the letters of the regular executor during a pending will contest and appointing an administrator *pendente lite*, he has no authority to intermeddle with the estate or right to possession of it until he gives bond in an amount required by the statute, which must be double the amount of the assets of the estate. The order of the probate court, requiring him to give a mere nominal bond, to be increased to an amount equal to one-half the assets upon the receipt of the assets by him, is not sufficient, and does not entitle him to demand from the regular executor possession of the estate.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

AFFIRMED.

*Marshall & Henderson, Elliott W. Major, Charles G. Revelle* and *George B. Webster* for appellant.

(1)   It is fundamental in the law that a judgment of a court in a case in which it has no jurisdiction is not *res judicata,* and what is said in the opinion in the case, outside of the dismissal, is purely *obiter dicta.*   23 Cyc. 1124, note 80; Hope v. Blair, 105 Mo. 85; Horn v. Railroad, 88 Mo. App. 469; Dailey v. Sharkey, 29 Mo. App. 518.   (2)   The decision of this court in Leahy v. Campbell, 274 Mo. 343, is not binding in this case, for the further conclusive reason that this court has since decided exactly the contrary in Johnson v. Brewn, 277 Mo. 393.   (3)   The part of the order suspending the letters of the executor pending the will contest was superfluous and wholly unnecessary, for the every simple and conclusive reason that the filing of the will contest in the circuit court *ipso facto* had automatically suspended not only the letters and powers of the executor so long as the will contest case remained pending, but also vacated the probate of the will itself in common form, and the will could then only take effect and be enforced after it had been admitted to probate in solemn form in the will contest case in the circuit court, and, therefore, the powers and letters of the executor were suspended by operation of law, and without any order of the probate court, until the termination of the will contest, and until then the executor had no right to administer upon the estate or to have possession of the assets of the estate. Johnson v. Brewn, 277 Mo. 393; In re Estate Brinckwirth, 266 Mo. 480; Stark v. Kerchgraber, 186 Mo. 663; Miller v. Staggs, 266 Mo. 449; State ex rel. v. Guinotte, 156 Mo. 153; State ex rel. v. Imel, 243 Mo. 519; In re

Soulard, 141 Mo. 671; Bridwell v. Swank, 84 Mo. 471; Lamb v. Helm, 56 Mo. 432; State ex rel. v. Moehlenkamp, 133 Mo. 137; Rogers v. Dively, 51 Mo. 193. (4) In support of their contention that an appeal lies from the order of the probate court, under Section 289, defendant relies upon the cases of: Rogers v. Dively, 51 Mo. 193; Lamb v. Helm, 56 Mo. 420; Achor v. Sullenger, 137 Mo. App. 372. These cases do not support defendant's contention. It is true that in these cases appeals were taken by the suspended executor or administrator after the appointment of an administrator *pendente lite,* but in none of these cases was the point made or passed on that an appeal would not lie from such an order, so that the point here involved cannot be determined by what was done or left undone in these cases. (5) Section 3956 is the section defining the jurisdiction of the circuit courts and the fourth paragraph of that section provides that the circuit court shall have "appellate jurisdiction from the judgments and orders of county courts, probate courts and justices of the peace, in all cases not expressly prohibited by law." This section does not attempt to prescribe in what cases an appeal may be taken from the probate court. It only prescribes the jurisdiction of the circuit court in cases where an appeal is allowed by other sections of the statute. It was passed at a time when there were courts of common pleas in this State which had expressly certain appellate jurisdiction, and it was only intended to prohibit the circuit court from taking jurisdiction in cases that were appealable to such other courts. In re Estate of Rooney, 163 Mo. App. 389; Morris v. Morris, 128 Mo. App. 676. (6) Defendant contends that the will contest case in the circuit court was in reality no contest or case at all, because if the will of the deceased was sustained the plaintiffs would get nothing, and, *per contra,* if the will was set aside and if it was decided that Lois Ann Burkham was the child of the deceased, then the plaintiffs would get nothing

because the child would inherit under the Statutes of Descents. Reduced to its last analysis, this contention would amount to this: If the plaintiffs in a will contest succeeded, then the action of the probate court in appointing an administrator *pendente lite* would be proper, but if the plaintiffs in the will contest case fail, then the appointment of an administrator *pendente lite* by the probate court, would be improper. Under defendant's contention the power and duty of a probate court to appoint an administrator would depend upon the result of the will contest case in the circuit court. The mere statement of such a contention is its own refutation. (7) The fact that the will contest case has ended, and was ended before the case of Leahy v. Campbell, supra, was decided, does not make this a moot case. The defendant has received $269,288.17 that rightfully belongs to the plaintiff. The defendant received this large sum wrongfully, illegally and unjustly. The defendant has made itself a trustee *ex maleficio* of this fund, and is accountable to the plaintiff for it. Elliott v. Machine Co., 236 Mo. 546. (8) The proper remedy to recover is an action for money had and received, and this is that kind of a suit. York v. Bank, 105 Mo. App. l. c. 137; Richardson v. Drug Co., 92 Mo. App. 521. (9) The defendant claims in its fourth defense that the plaintiff is not entitled to recover in this action, because the probate court ordered him to give a bond for $10,000, to be increased to $10,000,000 when the assets came into his possession, and that although the plaintiff gave the $10,000 bond, as administrator *pendente lite,* he never qualified as such for the reason that Sec. 25, R. S. 1909, requires a bond "not less than double the amount of the estate." Section 21 makes it the duty of the probate court to appoint an administrator *pendente lite* when a will contest case is filed in the circuit court, and the decisions hold that such is the only duty or power of the probate court, and that the law takes care of everything else without any order of the probate court.

Section 21 says nothing about an administrator *pendente lite* being required to give any bond, but, granting that Section 25 requires it, the contention of defendant is untenable. The appointment of the probate court vests such an administrator with the powers and franchises incident to the office, just as election by the people vests the powers and duties of an officer in the person elected. There is no statute or law which requires such an administrator (or an executor or regular administrator) to give a bond before entering upon the duties of the office, nor that the appointment shall be void unless the appointee gives the required bond within any particular or specified time, and it is only in cases where the law prescribes that a bond shall be given within a particular or specified time or before entering upon the duties of the office, and further expressly provides that in case of a failure so to give the bond, that the appointment or election shall become void, that the giving or failing to give a bond in the amount specified in the statute has any effect whatever upon the appointment or election of the officer or administrator. In other words, the appointment and giving of the bond or the taking of the oath required, are separate and distinct matters, unless linked together by an express statute, and the rule in Missouri is not strict, and holds that the failure to give the bond in the required time, does not vacate the office, but is merely directory. 29 Cyc. 1376, 1385-1389; State ex rel. v. Churchill, 41 Mo. 41; State ex rel. v. Texas Company, 44 Mo. 230; State ex rel. v. Holtcamp, 168 Mo. App. 411. (10) Section 25, requires the court, judge or clerk in vacation to take a bond of the persons to whom letters of administration are granted in such amount as the court, judge or clerk in vacation shall deem sufficient, not less than double the amount of the estate. Yet the Supreme Court, construing this section, has held that the bond binds the administrator and the sureties, though not approved. Henry v. State to use, 7 Mo. 778; Brown v. Weatherby, 71 Mo. 152. It

follows that the contention of the defendant that the plaintiff had not given such a bond as the statute requires, did not effect in any way the plaintiff's right or title to the office of administrator *pendente lite,* and did not affect plaintiff's right to demand possession of the assets from the defendant, and is no bar to plaintiff's right to recover the commissions in this case. (11) The defendant also contends that the plaintiff's claim, if any, is as administrator *pendente lite,* and not as an individual, and that it is a claim against the estate of James Campbell and not against the defendant, which should have been presented to the probate court before final settlement, and that the probate court could have allowed plaintiff whatever it thought was a proper amount, whether plaintiff ever got possession of the assets of the estate or not, and as plaintiff did not do so, and as the defendant administered upon the assets of the estate (wrongfully, if we are right in our contentions) and allowed the defendant the amount here sued for, and ordered distribution and discharged the defendant, therefore, the plaintiff has lost whatever rights he had, if any. If Section 21 means anything, it is that when a will contest case is instituted in the circuit court, and the attention of the probate court is called to that fact, it becomes the imperative duty of the probate court to appoint an administrator *pendente lite,* whose duty it is to administer upon the estate during the pendency of the will contest case, and the law immediately and *ipso facto* suspends the powers of the executor and nullifies the probate of the will in common form, and the will can then only be probated in solemn form. This being true, the administrator *pendente lite* is legally entitled to the possession of the assets of the estate, and to administer upon them, and as an incident to his office is entitled to the commissions arising out of such administration. If the executor prevents the administrator *pendente lite* from so doing, and so becoming entitled to the commissions, he does a wrong and damages

the administrator *pendente lite* to the amount of the commissions he has received that of right belong to the administrator *pendente lite*. The executor cannot take advantage of his own wrong by depriving the administrator *pendente lite* of what he would have been legally entitled to and would have received but for the wrongful act of the executor. This is exactly the status of the parties in this case, and the plaintiff has been damaged as set out in the first count of the petition. If, however, the remedy of the plaintiff is not for damages then beyond cavil the plaintiff is entitled to recover under the second count of the petition for money had and received by the defendant which of right belonged to the plaintiff. The probate court had no jurisdiction to try either the question of damages or of money had and received. The circuit court alone has jurisdiction to try such questions. Hence, the failure of the plaintiff to apply to the probate court for an allowance or commissions cuts no figure in this case and is no bar to this suit.

*Jourdan, Rassieur & Pierce* and *Sam A. Mitchell* for respondent.

(1)   It is the duty of the probate court to hear evidence and determine whether an alleged will contest is in fact a will contest before suspending the executor's letters or appointing an administrator *pendente lite*. Such a suit is not a will contest within the meaning of Secs. 13 and 525, R. S. 1919, unless brought by a person interested in the probate, and having a legal right to contest. State ex rel. Damon v. McQuillin, 246 Mo. 674; Gruender v. Frank, 267 Mo. 713; Braeuel v. Reuther, 270 Mo. 603; Hahn v. Hammerstein, 198 S. W. 833; Wynne v. Spiers, 26 Tenn. 394.   (2)   An appeal does lie from an order of the probate court erroneously suspending the letters of the executor and appointing an administrator *pendente lite* in the place of such executor, particularly if the alleged will contest is only a

sham proceeding brought by persons not in fact interested in the probate of the will. Leahy v. Campbell, 274 Mo. 343; Lamb v. Helm, 56 Mo. 420; Rogers v. Dively, 51 Mo. 193; Achor v. Sullenger, 137 Mo. App. 372; Davenport v. Davenport, 68 N. J. Eq. 611, 614; Steen v. Springfield, 120 S. W. 408. (a) A suspension is a temporary revocation of the executor's letters and an appeal lies under Section 282 (9th subd.). State ex rel. v. McQuillin, 246 Mo. 674; State ex rel. Alderson v. Moehlenkamp, 133 Mo. 134; Hanley v. Holton, 120 Mo. App. 393. (b) A suspension of the executor's letters is also a "final decision," and an appeal lies under Section 282 (15th subd.). In re Estate of Rooney, 164 Mo. App. 393; McCrary v. Menteer, 58 Mo. 446; Hanley v. Holton, 120 Mo. App. 393. (c) An appeal also is justified under Section 2436. Brockman v. Webb, 189 Mo. App. 475. (3) The judgment (on the appeal from the order of the probate court) setting aside the order suspending the executor's letters and reinstating the executor, and the decision in Leahy v. Campbell are *res adjudicata* in this case, first, because the appeal was proper, and second, because the court had jurisdiction of that general class of cases to which such appeal belonged. The circuit court, and later the Supreme Court on appeal, in any event had jurisdiction to hear and determine whether or not such appeal was proper, and the judgment, being in the nature of a judgment *in rem,* is binding not only upon the immediate parties, but upon the world. If the judgment reinstating the executor became binding, then the administrator *pendente lite* cannot now complain of his removal, even though such removal might have been erroneous. Dowdy v. Wamble, 110 Mo. 280; 15 C. J. 734; Black on Judgments (2 Ed.) secs. 808, 795; 15 R. C. L. sec. 72; Meriwether v. Block, 31 Mo. App. 170. (4) Plaintiff never became legally qualified as administrator *pendente lite* because he failed to give bond in "double the amount of the estate," as required under Sec. 25, R. S. 1909. State

to use v. Price, 21 Mo. 435; State ex rel. v. Holtcamp, 168 Mo. App. 402, 410; Bradley v. Commonwealth, 31 Pa. St. 522. The probate court is a court of limited jurisdiction and has only such powers as are conferred on it by statute. Strouse v. Drennan, 41 Mo. 289. That court has no power to waive the bond nor to fix the amount thereof at less than the amount fixed by statute. (5) An administrator *pendente lite* is not entitled to compensation except for services actually rendered. Leahy v. Campbell, 274 Mo. 359, 361; Hawkins v. Cunningham, 67 Mo. 418. (a) Any allowance which the administrator *pendente lite* claims must, in the first instance, be fixed by the probate court. He cannot sue for such compensation in any other court. (b) Plaintiff individually can have no claim growing out of the refusal of the defendant to turn over the estate to him. His right, if any, to demand the estate, was a right vested in him in his representative capacity. (c) If plaintiff was entitled to compensation it was out of the estate, not out of compensation due the executor.

GRAVES, J.—This case first appeared in Division No. One, wherein an opinion was written by ELDER, J., reversing the judgment and remanding the cause. As a member of that division, I dissented, and the votes of other judges were such as to leave no opinion, and the case was transferred to this court, and the divisional opinion having been rejected, the case has been lodged with me for final disposition. Judge ELDER has fairly outlined the facts, and I adopt his statement of facts, reserving the right to suggest other facts, if such there be. I quote his statement of facts in full, for the reason that he may desire to dissent by opinion in the case, and can shorten his dissent by reason of the stated facts being to all practicable purposes the same. In fact there is no disagreement as to facts, unless such arise from mere conclusions in pleadings. It is purely a paper case. Judge ELDER's statement follows:

"This is an action to recover $269,288.17 commissions received by defendant from the estate of James Campbell, deceased, to which commissions plaintiff claims he is entitled. The case is here on appeal from an order of the Circuit Court of the City of St. Louis overruling a motion by plaintiff for judgment on the pleadings and sustaining a like motion of defendant.

"The petition is in two counts, the first count being for damages alleged to have been sustained by reason of defendant's refusal to turn over to plaintiff the assets of the estate of the said James Campbell, whereby plaintiff was wrongfully deprived of the commissions he would have earned, and the second count being an action for money had and received, to the amount of such commissions.

"The first count alleges that James Campbell, then domiciled in the city of St. Louis, departed this life at Greenwitch, Connecticut, on June 12, 1914; that on June 16, 1914, a paper purporting to be the last will of said Campbell was presented by defendant to the Probate Court of the City of St. Louis for probate, defendant then alleging that said Campbell was possessed of an estate of the approximate value of $20,000,000; that upon the filing of said will defendant obtained letters testamentary as the executor of the said purported will, and thereupon took possession and assumed control of all the real and personal estate of said Campbell; that on or about September 19, 1914, one Margaret C. Harrison and others, as plaintiffs, instituted a proceeding in the Circuit Court of the City of St. Louis against the Mercantile Trust Company (defendant herein), Florence A. Campbell and others, in the nature of a will contest, wherein they drew into question the validity of the said purported will; that on October 9, 1914, the said Margaret C. Harrison and others, plaintiffs as aforesaid, filed in the Probate Court of the city of St. Louis their motion for the appointment of an administrator *pendente lite* to take charge of the assets of the estate

of said James Campbell and to administer the same according to law during the pendency of said will contest; that on October 22, 1914, the said probate court sustained said motion and appointed plaintiff as administrator *pendente lite* of said estate and fixed his bond for the time being at the sum of $10,000, to be increased upon receiving the assets of said estate to the sum of $10,000,000; that thereupon, on the same day, plaintiff, as such administrator *pendente lite,* tendered his bond for $10,000, which was accepted, approved and filed; that thereafter, on October 23, 1914 plaintiff having arranged. for, and being then ready, willing and able to give the increased bond of $10,000,000, and having so advised defendant, made demand upon defendant for the delivery to him of the personal property belonging to the estate of the said Campbell and the surrender to him of the possession of the real property owned by said Campbell, but that defendant, without warrant or authority of law, refused to surrender either the said personal property or the possession of the real estate, and wrongfully and against the right of plaintiff withheld the delivery of the same from him; that by reason of the premises and the wrongful acts of defendant aforesaid, plaintiff has suffered damage in the sum of $269,288.17, for which he prays judgment and costs.

"The second count of the petition alleges that between October 22, 1914, and April 30, 1917, plaintiff was the duly and legally appointed administrator *pendente lite* of the estate of James Campbell, deceased, under and by appointment of the Probate Court of the City of St. Louis, and as such was entitled to the possession of the property and assets of the said estate and to the compensation provided by law for such administrators for their services in administering upon the estates of deceased persons; that between the said mentioned dates defendant came into possession of the sum of $269,288.17, the same being the compensation provided by law for administration upon the estate of said James Campbell,

which sum defendant withheld, and still withholds from plaintiff, although he has many times demanded it; that by reason of the matters and things aforesaid defendant has received to plaintiff's use the sum of $269,288.17, which in justness and fairness it was not entitled to receive, and which in truth and fact belonged to plaintiff. Judgment is prayed in the sum of $269,288.17, with interest and costs.

"Defendant's answer to the first count of the petition admits that James Campbell died on June 17, 1914, possessed of a large estate; that his will was probated and defendant appointed executor thereof as alleged; that Margaret C. Harrison and others instituted the proceeding in the Circuit Court of the City of St. Louis, and filed their motion in the Probate Court for the appointment of an administrator *pendente lite;* that the said probate court entered an order purporting to appoint plaintiff as such administrator *pendente lite,* and that plaintiff gave a $10,000 bond, which the probate court purported to accept and approve. The answer denies all other allegations of the first count of the petition.

"The answer further avers that the proceeding brought by Margaret C. Harrison and others was not a will contest for the reason that none of the plaintiffs in said proceedings were heirs at law of James Campbell, and were in no way interested in his estate or in the probate of his will, and that therefore plaintiff herein was never legally appointed administrator *pendente lite* of the estate of said Campbell; that in the said proceeding brought by Margaret C. Harrison and others it was pleaded by the defendants that James Campbell left as his sole surviving heir at law his only child, a daughter, Lois Ann Burkham, *nee* Campbell, and an issue was framed in said suit whether said Lois Ann Burkham was the child of said Campbell, upon which issue a judgment was entered on May 6, 1915, adjudging that the said Lois Ann Burkham was the child and

296 Mo.—37.

only heir at law of said Campbell, and that the suit be dismissed; that the plaintiffs in said suit took an appeal to the Supreme Court of Missouri, but on April 30, 1917, said appeal was dismissed, and the judgment of the circuit court thereupon became final; that said judgment, establishing the status of Lois Ann Burkham, is binding and conclusive upon the world, and defendant herein now pleads the same as *res adjudicata* of the question as to whether Margaret C. Harrison and others had any right to institute suit to contest the said will, and as to whether or not said proceeding was in fact a will contest proceeding.

"The answer further alleges that the appointment of plaintiff herein as administrator *pendente lite* was void for the further reason that the court fixed plaintiff's bond at only $10,000, to be increased to $10,000,000 upon his receiving the assets, and plaintiff only gave bond for $10,000, and never gave bond for $10,000,000 to entitle him to receive the assets, and that therefore the appointment of plaintiff and the bond for $10,000 were null and void, because bond was not given for an amount "not less than double the amount of the estate," as required by law, and therefore plaintiff never qualified as administrator *pendente lite* and never acquired any rights under said order of appointment; that within ten days after the order appointing plaintiff administrator *pendente lite*, defendant herein as executor, Florence A. Campbell, Lois Ann Burkham and the St. Louis University, the persons interested in said estate, filed their affidavits and prayed for an appeal and filed their *supersedeas* bonds for appeal, which was duly allowed to the circuit court; that said appeal coming on to be heard and the parties, including plaintiff herein, appearing, the court after having fully considered the same entered judgment denying the application to suspend the letters testamentary granted to defendant herein, and ordered said judgment certified to the probate court; that thereafter plaintiff herein was allowed an appeal to the Supreme

Court from the judgment of the circuit court, but that the parties who filed said motion, said Harrison and others, did not appeal from said judgment; that subsequently, on April 27, 1918, the Supreme Court entered its order dismissing plaintiff's appeal, and the judgment of the circuit court became final; that in the opinion of the Supreme Court it was decided, first, that plaintiff was not a party to the proceeding to procure the suspension and revocation of the letters testamentary of defendant herein, and that he had no right to appeal from the judgment of the circuit court denying such application, and, second, that his appeal should also be dismissed for the reason that the suit theretofore brought by said Harrison and others had been previously dismissed; that the Supreme Court denied the claim of plaintiff wherein he claimed that the appeal should be entertained, notwithstanding the dismissal of the Harrison suit, for the reason that he was entitled to compensation for his services as administrator *pendente lite,* and the court decided that he was not entitled to any compensation and that an appeal did lie; that defendant herein therefore pleads said judgment of the Supreme Court as *res adjudicata.*

"The answer also avers that even if the probate court had jurisdiction to suspend and revoke defendant's letters testamentary, nevertheless, defendant herein and others interested having appealed from said order and given *supersedeas* bonds, and the circuit court having entered its judgment denying the application to suspend the letters testamentary, defendant was not guilty of any wrong in declining and refusing to surrender to plaintiff the personal property of the estate or the possession of the real estate; that plaintiff was never entitled to any compensation as administrator *pendente lite,* because he never administered upon the estate or rendered any service as administrator; that if plaintiff had any right to demand the delivery to him of the personal property and the surrender to him of the pos-

session of the real estate, such right was vested in him solely as administrator *pendente lite*; that if plaintiff was ever legally appointed administrator *pendente lite,* nevertheless his right as such administrator ceased upon the dismissal of the Harrison suit, if not earlier, whereupon the letters testamentary of defendant were reinstated, and plaintiff cannot now bring any action in his individual name, either for the recovery of the estate or for compensation to which he would have been entitled if he had legally qualified as administrator *pendente lite;* that under the law plaintiff could only receive such compensation as might be allowed to him by the probate court for services actually rendered by him in administering upon the estate, and that court alone had jurisdiction to make such allowance; that on December 14, 1918, defendant, as executor, filed its final settlement in the probate court, which settlement was approved and an order entered discharging defendant as executor, and that said estate is now finally closed; that if plaintiff had any right to compensation he lost the same because such compensation was not fixed before final settlement of the estate and discharge of defendant as executor, which order is now final; that if plaintiff was entitled to any compensation, such claim would have been against the estate and not against the former executor, and he was entitled either to the whole estate or to nothing, and his cause of action could only be for the recovery of the property of the estate; that he can have no right of action for damages equivalent to such compensation as he might have earned if he had rendered services to the estate, as such claim for compensation could only be urged against the estate and could only be fixed and allowed by the probate court; that defendant, as executor, could not pay plaintiff damages or compensation when the property was demanded, because defendant would have no right to do so, and therefore plaintiff cannot recover; that the damage sustained by plaintiff, if any, was not caused by defendant's

refusal to deliver possession of the estate, as alleged, but because plaintiff failed in due time to make application to the probate court for an allowance of compensation, which that court could have allowed if his claim were meritorious.

"The answer to the second count of the petition denies that plaintiff was the legally appointed administrator *pendente lite,* that he was entitled to the property and assets of the estate, and that he was entitled to the compensation provided by law for such administrators. The answer then admits that between October 23, 1914, and April 30, 1917, defendant received for its services in administering upon the said estate as executor, the sum of $269,288.17, being five per cent of the amounts disbursed or distributed by it as such executor; that the amount earned and received by it between October 23, 1914, and March 29, 1915, was only $4,629.15, but that the amount earned and received between October 23, 1914, and April 30, 1917, was $269,288.17, and that defendant has refused to pay said sum to plaintiff, although he has demanded the same. The answer then denies that defendant received said sum or any part thereof as compensation due plaintiff or for the use of plaintiff, or that it was not justly and fairly entitled to the sum so received.

"After a general denial of all allegations of the second count of the petition, the answer then pleads specifically the various defenses urged against the first count, all as hereinbefore set forth.

"After the filing of defendant's answer plaintiff moved for judgment on the pleadings alleging that the answer 'does not state facts sufficient to constitute a defense against the claim of plaintiff,' and that 'plaintiff is entitled, as a matter of law, to the judgment claimed.'

"Thereafter, defendant filed a motion for judgment on the pleadings, as follows:

"'Now comes defendant and states that the plaintiff has declined to make reply to the answer heretofore

filed by defendant, but instead of making reply has filed a motion for judgment on the pleadings.

" 'The defendant therefore prays that the answer of defendant be taken as confessed and moves the court to render judgment in favor of defendant upon each count of the petition.'                                              ,

"The cause was submitted upon the above-mentioned motions. The court overruled plaintiff's motion, and on the same day sustained defendant's motion and entered final judgment for defendant. From this judgment plaintiff has appealed."

I. As suggested in the first part of our statement, this is purely a paper case. There can be no difference as to the facts, unless they arise by virtue of mere statements of conclusions in the pleadings rather than statements of fact. The cause was submitted
Motions Tantamount to Demurrer. upon the pleadings under the two respective motions for judgment upon the pleadings. Suggestion is made that those motions for judgments are in law and fact demurrers, and a right to plaintiff to plead over might exist. We do not so view them.

Neither the appellant's abstract of record nor the respondent's supplementary abstract of record shows any request by plaintiff (appellant) to plead over, but on the other hand the whole course of the trial indicates that both parties intended to submit the case—the plaintiff on the theory that defendant's answer did not state any good defense, among the number pleaded, and the defendant on the theory that such answer (1) did contain at least one or more absolute defenses to all matters pleaded in the petition, or (2) that the petition stated no cause of action. Of course the motion of plaintiff also covered the view that his petition did state a cause of action, in one or both counts thereof, as it could not well be said that he was moving for judgment upon a lifeless petition. Had plaintiff desired to treat the motions as de-

murrers, he should have at least asked leave to plead over after defendant's motion (demurrer under appellant's theory) had been sustained. This he did not ask and permitted judgment to go against him. Learned counsel for the plaintiff did not treat these motions as demurrers. The additional abstract of record (undisputed here) prints the complete bill of exceptions. As to plaintiff's motion this record says:

"Thereafter, to-wit, on the 4th day of October, 1920, at the October term of said circuit court, the said court overruled plaintiff's motion for judgment on the pleadings; *to which action and ruling plaintiff at the time duly excepted and continues to except.*"

As to defendant's motion for judgment this record says:

"To which action, ruling and judgment of the court in sustaining defendant's motion for judgment on the pleadings and in entering said judgment plaintiff at the time duly excepted and continues so to except."

When able counsel took these exceptions and filed this bill of exceptions they were clearly of the opinion that these motions were not demurrers, but on the other hand were such instruments as required a bill of exceptions to preserve them. These counsel knew that no bill of exceptions was required to preserve a demurrer or a motion which performs the functions of a demurrer. We note that three ex-members of this court appeared for plaintiff. The third one appears upon the reply brief for the first time. In this brief the idea of these motions being in the nature of demurrers is practically abandoned, and the case here is in said reply brief presented upon the only possible theory for plaintiff's side of the case, i. e. that the record proper is before us and that upon the pleadings the judgment is erroneous.

II. It is urged that these motions for judgment were in the nature of demurrers, and therefore no bill of exceptions was required to preserve them. There is sup-

port of this view in Todd v. Mo. Pac. Ry. Co., 33 Mo. App. l. c. 114, but the rule there, or even the rule in O'Connor v. Koch, 56 Mo. l. c. 262, does not accord with the recent rulings of this court. The ruling in O'Connor's Case was right in result, but there is some broad language used in the opinion on the page indicated above. The motion involved there was one to dismiss the case and was not one for judgment on the pleadings.

Beginning with Sternberg v. Levy, 159 Mo. l. c. 629, there is a long line of recent decisions holding that a motion for judgment on the pleadings is not a demurrer, and that such a motion must be preserved in the bill of exceptions, which bill of exceptions must contain a motion for new trial, in which the action of the court on the motion is called to the attention of the court. In the Sternberg Case, supra, it is said:

"It is claimed that the motion for judgment on the pleadings is not a demurrer, and hence is part of the record proper, and therefore no motion for new trial or bill of exceptions was necessary, but that the court will review the judgment upon the record, so constituted.

"A motion for judgment on the pleadings is not a demurrer. It partakes of some of the qualities of a demurrer, but it is not a demurrer, and hence it is not a part of the record. It is a matter of exception and can only be made a part of the record by a bill of exceptions.

"It partakes of the nature of a demurrer, in that, it admits all facts that are well pleaded, and if it is overruled the order overruling it is not a final judgment from which an appeal will lie, but the party may plead over or proceed to trial on the issues joined. On the contrary, if it is sustained, judgment goes at once, whereas if a demurrer is sustained the order is not a final judgment, the party has a right to plead over, and it is only in case of refusal to plead over that final judgment can be rendered on demurrer."

See also Coffey v. Carthage, 200 Mo. l. c. 629; Godfrey v. Godfrey, 228 Mo. 513; Shohoney v. Railroad, 231

Mo. l. c. 152; Interstate Ry. Co. v. Railroad, 251 Mo. l. c. 717; Equitable Life Ins. Co. v. Natl. Bank of Comm., 197 S. W. l. c. 117; Hodson v. McAnerney, 192 S. W. l. c. 423. These cases not only rule that a motion for judgment upon pleadings is a pure matter of exception, which must be preserved in a bill of exceptions, but they further hold that there must be present in the bill of exceptions a motion for a new trial in which the court's attention is called to the matter. That there must be a motion for a new trial in order to preserve such motion for judgment in a bill of exceptions is more tersely stated in Equitable Life Ins. Co. Case, supra, wherein it is said:

"It is contended that the court erred in overruling plaintiff's motion for a judgment upon the pleadings. Concerning this point, it is sufficient to say that the matter is in nowise saved or referred to in the motion for a new trial, and the point is therefore not properly preserved for appellate review. [Godfrey v. Godfrey, 228 Mo. 507; Interstate Ry. Co. v. Railroad, 251 Mo. 707.]"

The other cases are fully in line, but the case of Coffey v. Carthage, supra, fits this case as does the glove the hand. In that case, in discussing matters of exception (and considering whether the sustaining or overruling of a motion for judgment is a matter of exception), it is said, at page 629:

"It is well settled that no matter of exception can be considered by this court upon appeal or writ of error, unless the attention of the court below be called to it upon motion for new trial. This has been so often decided that it is deemed unnecessary to cite authorities upon the subject. The mere preservation of this question in the Jasper Circuit Court, by having signed by the judge of said court, and filed therein at the same term at which the ruling was made, a bill of exceptions, did not obviate the necessity of thereafter, after verdict, filing a motion for new trial specifically setting forth therein all matters of exception complained of, and thereby give the trial court an opportunity to correct its own error."

So that we rule (1) that court actions upon motions for judgment are matters of exception; (2) that there must be a motion for a new trial again calling the court's attention to such action; (3) that the motion for a new trial and the exception must both be preserved in a bill of exceptions. There was no motion for a new trial in this case, and absent that motion from the bill of exceptions we have only the record proper before us. This is so ruled in Coffey's Case, and has been the unbending rule of this court. The record proper consists in the instant case of the pleadings (petition and answer) and the judgment entered. Of that matter later.

III. There can be no question that the failure to file a motion for a new trial and to preserve an exception to the overruling of that motion in the bill of exceptions, renders all exceptions taken during the trial absolutely futile in the hearing in this court. Such failure leaves, as above said, only the pleadings and judgment (the record proper) for our consideration. In addition to the cases cited, which cover this proposition, as well as the question as to the character of the motions for judgment, many others could be cited. As said in the Coffey Case, supra, further citations are useless, so universal are our holdings.

Permissible Judgment.

Passing now to the pleadings and judgment, what is the situation? The judgment simply recites that defendant's motion for judgment upon the pleadings is sustained, and adjudged that defendant have judgment with the dismissal of plaintiff's petition. Is such a judgment proper under the facts pleaded? If the petition fails to state a cause of action, then this judgment is sustained by the pleadings. If the petition states a cause or causes of action, and the answer states one or more good defenses to such cause or causes of action pleaded in the petition, then the judgment accords with the pleadings. In other words, the motion of plaintiff admits all well pleaded facts. A petition may plead facts which make a cause of

action and yet the answer may plead facts which show an absolute defense or defenses notwithstanding the matters stated in the petition. As example, a plaintiff may plead on a note, and the defendant plead payment. If plaintiff fails or refuses to reply and the defendant moves for judgment, the fact of payment is an admitted fact, and judgment must go for defendant. In other words, the defendant's motion for judgment is good: (1) if the petition fails to state a cause of action, or (2) if the answer states a defense, notwithstanding the statements made in the petition. In this light we shall view the pleadings, and from them determine whether or not there is foundation upon which the judgment can legally stand.

IV. The petition discloses the fact that Mr. Leahy never did a thing in the administration of the estate. It is averred therein that he never came into the possession of the assets of the estate. He says that he demanded the assets before he gave the statutory bond required by law, which would entitle him to receive them. He makes no claim to have served the estate either by collecting and preserving the estate, or in the distribution thereof, if he could make distribution. We have ruled that an administrator *pendente lite* has no right to make distribution. [Union Trust Co. v. Soderer, 171 Mo. l. c. 679.] He holds and preserves the estate, and in emergencies, under order of court, may make disbursements for the protection of the estate. At the end of the litigation he must turn over to the regular executor or a regular administrator. It may be the one named in the will, or one later named by the court. Receivers, executors or administrators are paid for services actually rendered. They are unlike persons holding official positions with salaries fixed by law. This much we ruled in the previous case, and from that ruling we see no sound reason to depart. [Leahy v. Campbell, 274 Mo. l. c. 358 et. seq.] We then said at the pages cited:

Nominal Bond: No Right to Assets: Jurisdiction.

"So far as the record before us shows Leahy never got further than giving the $10,000 bond mentioned in this order. He never qualified under the order, so as to receive and *hold* the assets of the estate. It is not contended that he ever got possession of the estate. . . .

"Discussing the section of law authorizing the appointment of an administrator *pendente lite,* this court in Hawkins v. Cunningham, 67 Mo. l. c. 417 and 418, has thus described such an administrator: 'This section distinguishes betwixt an administrator appointed pending the contest of a will and the executor appointed by the will or an administrator with the will annexed. The latter is termed the regular administrator. The administrator appointed while the suit is pending is only a temporary or special administrator. In the case of Lamb v. Helm, 56 Mo. l. c. 433, this court said: "Such special administrators occupy more nearly the position of a receiver who acts under the direction of the court, than they do the position of a general administrator." ' To like effect is State ex rel. v. Imel, 243 Mo. l. c. 186. . . . .

"We again quote from the learned opinion in Imel's Case, 243 Mo. l. c. 186: 'By analogy, his office is said to be in the nature of a receivership; and, when the contest is at an end and the validity of the will established, his term of office expires and his right to act ends. The executor or regular administrator c. t. a. becomes again qualified to act in the administration of the estate. So, when that time comes the provisional administrator is *functus officio.* He must step down and out *instanter,* settle and turn over the money and property of the estate to the executor or regular administrator, who, by that token, comes into his own again. [R. S. 1909, sec. 21; Robards v. Lamb, 76 Mo. l. c. 194; Robards v. Lamb, 89 Mo. l. c. 311; State ex rel. v. Moehlenkamp, 133 Mo. l. c. 138; Lamb v. Helm, 56 Mo. l. c. 432; Hawkins v. Cunningham, 67 Mo. 415.]'

"In the instant case, Mr. Leahy never had possession of the Campbell estate. He never performed a single

duty imposed by law upon administrators or executors, nor did he a single act in the line of a receiver. He neither collected nor distributed a single penny of this estate, to the time the law rendered him (to use the language of Imel's Case, supra) '*functus officio.*' He may have partially qualified himself to act by giving the first limited bond required by the order appointing him, but he never acted. Administrators and receivers are not paid for being qualified to act, but they are paid for services to the estate actually rendered. In the case of administrators, Section 229 fixes the services to be performed and the pay therefor, and as to receivers the court fixes the compensation on the basis of services performed, and not on the basis of services to be performed, or on a willingness to perform services. From the time of his appointment to the date of his statutory demise not a service to this estate was rendered by Mr. Leahy. This is not a case where an officer in a contested election holds his office until ousted. In such case the successful contestant may be entitled to recover for what he would have earned. This is not such a case, and cannot be governed by the same rules. Administrators and receivers must serve the estate before they are entitled to compensation. Their compensation, under the law, is based upon actual service in the preservation and distribution of the estate. Willingness to perform does not suffice.''

In the same case we suggested that Mr. Leahy had never qualified to receive the assets and administer upon the estate. The petition upon its face shows that a $10,000 bond was not in compliance with the demand of the statute. The quotations supra so show.

The probate court was without power to authorize the turning over of vast assets, without the statutory bond. In this case Mr. Leahy might have been amply responsible personally and without any bond, but the purpose of the statute is to make safe the assets of the estate by good and sufficient bond in double the amount

of the assets, and this too, before the assets shall be turned over to the person named. The reason for this rule is clear, or can be made clear. Suppose there be an estate of one million dollars in cash or negotiable bonds. Suppose the court made an order as was made in this case, and the appointee under a ten-thousand-dollar bond got possession of the one million dollars and then fled the realm. He could pay his bondsmen and have a neat sum for his trouble. This but demonstrates the idea that the law contemplates a bond in double the assets, and this bond in advance of receiving the assets. The statutory bond is a condition precedent to receiving the assets and acting in the matter. The order of the probate court upon its own recital of facts was a fraud upon the law, and in so far as it attempted to authorize the turning over of the assets in advance of the statutory bond was void. Mr. Leahy, from the face of his own petition, had never legally qualified to demand or take possession of the assets of the Campbell estate. This much we ruled in the previous case, supra. The regular administrator or executor could rightfully refuse to turn over the assets until the administrator *pendente lite* had qualified by giving the bond required by law. It would be a dangerous doctrine were we to announce that in the face of the statute a probate court could authorize an administrator to take possession of large estate assets on a mere nominal bond. The statute does not so read, and we would do violence by writing such an idea into the law. Leahy having no right to demand or receive the property, acquired no cause of action by reason of the refusal to turn over to him. The count in tort for this and other reasons fails. Without a right to demand he could not have action in tort or otherwise.

V. Apparent upon the face of plaintiff's petition is another fatal defect. Had the petition averred the giving of a statutory bond (which it does not) and had it averred that plaintiff had taken the actual possession of

the estate, and had performed services toward the pre-
servation of such estate, pending an actual will contest,
yet the plaintiff should have first presented
his claim for services to the probate court
for consideration and allowance. In other
words, the probate court is the court having
original jurisdiction in such claims, and not the circuit
court, where by this suit the plaintiff first lodged his
claim. As this court has ruled (Union Trust Co. v.
Soderer, supra), and as stated in 11 R. C. L. sec. 558, p.
453, special or temporary administrators (an administra-
tor *pendente lite* is such) are not appointed to wind up
and distribute an estate, but to preserve the estate for
the regular administrator. In a will contest the regular
executor would receive from the special administrator
the estate for final settlement and distribution if the will
be sustained. If it be not sustained, then a regular ad-
ministrator would have to be appointed, and he would
receive the estate from the temporary administrator.
As stated in the text cited, supra:

"The occasion for such an appointment usually
arises when for some cause, such as a pendency of a suit
concerning the proof of the will, regular administration
is delayed. Obviously, therefore, the powers and duties
of a special administrator are limited, and do not include
authority to settle or distribute the estate or to sell land
for any purpose. Generally they are restricted to the
conservation and preservation of personal property of
the decedent until a regular administrator can be ap-
pointed. And it is the duty of a special administrator
to turn over the estate to the regularly appointed ad-
ministrator or executor, on his appointment, which
generally works a revocation of the special letters."

If for the preservation of the estate it became neces-
sary to pay out funds, or even to sell real estate, we are
inclined to the view that under an order of the probate
court, whose officer he is, as a receiver is an officer of a
chancery court, he could pay out money or even sell

*Suit Must be Brought in Probate Court.*

realty, but only for the preservation of the estate. The statute makes no provision for the sums to be allowed such special administrator. Section 220, Revised Statutes 1919, and Section 229, Revised Statutes 1909, refer to the regular administrator. [Hawkins v. Cunningham, 67 Mo. l. c. 418.] But even if the special administrator were to receive compensation (and he should if he preserves the estate), for such services as he rendered, it would be for the probate court to pass upon in the first instance. Those statutes provide for a commission of five per cent, but it has been ruled that such allowance cannot be made unless distributions have been made. It is the final distribution which determines the five per cent commission. [In re Garrison v. Trust Co., 77 Mo. App. 338; Hawkins v. Cunningham, 67 Mo. l. c. 418; Hitchcock v. Mosher, 106 Mo. l. c. 582.]

If one administrator serves part of the time, and another the remainder, we have never gone further than to rule that the first administrator should be paid only on the amount of funds disbursed by him. [Cases cited, supra.] Whilst the statute fixes the commission, yet it contemplates that it should be allowed by the probate court and paid out of the estate at or prior to the final settlement of the estate. The allowances are made by the probate court. Mr. Leahy made no claim against the estate in his alleged capacity as administrator *pendente lite*. He makes no claim now for anything save the five per cent. If the probate court wrongfully paid the defendant, this fact does not give Leahy a cause of action against the defendant. If he were entitled to anything (which we deny under the facts pleaded by him) his claim was against the estate and not otherwise. He is neither suing the estate nor the executor of the estate. This suit is one between private individuals. This also suffices to sustain the judgment *nisi*, for if it be conceded that the allowances made to defendant were wrongfully made by the probate court, the estate, through the heirs and devisees, alone could complain. This alleged wrong-

ful payment could not give this plaintiff a cause of action against defendant. His claim, if any he had, was against the estate.

As to that count in his petition alleging failure to turn over upon demand and consequent damages, it suffices to say that his remedy was to sue for the possession, if he were qualified to sue for and receive the assets of the estate. This he did not do. Or, he might have had defendant cited in the probate court for withholding property of the estate. This he did not do. He stood by and allowed the probate court to pay these fees to defendant and close the estate. These allowances, like other judgments of the probate court, are final as to the right of defendant to receive the commission.

VI. The foregoing propositions are based upon the theory that plaintiff's petition failed to state a cause of action. These, we think, suffice to permit the judgment entered to stand upon the pleadings herein. But this is not all. There was much new matter in the answer. Judgments of the probate court, of the circuit court and of this court are plead in the answer as *res adjudicata*. Some of this new matter should be noted. It must be considered that plaintiff filed no reply, and hence the facts stated in the answer constitute very largely the facts of the present case. Averring that the suit filed by Margaret Harrison et al. was not a will contest, the answer in this case avers that the probate court suspended the letters of administration issued to defendant upon the application of Margaret Harrison et al; that an appeal from such judgment and order was granted to the circuit court; that Leahy and his attorneys were present and assisted Harrison et al. in that trial in the circuit court; that the judgment of the circuit court was against Harrison et al., and in favor of the defendant in this suit and the heirs and devisees of Campbell; that Harrison et al. did not appeal, and on

*Res Adjudicata.*

296 Mo.—38.

these facts this circuit court judgment is *res adjudicata*. These facts bring in a matter not involved in the case of Leahy v. Campbell, 274 Mo. 343, supra. In that case we ruled that Leahy was not a party to the suit, and hence could not appeal. This because only a party to a suit can appeal from a judgment therein. Upon this point we need not cite the case, but we cite the statute, Section 1469, Revised Statutes 1919. Since 1895, Laws 1895, p. 91, that statute has read: "Any party to a suit." Prior to that it read: "Every person aggrieved" might appeal. But the ruling in Leahy v. Campbell, 274 Mo. 343, supra, is not opposed to the plea of *res adjudicata* now invoked against Leahy in the pleading of this circuit court judgment. As to all the parties shown by the pleadings such judgment became final in the circuit court. This because they did not appeal. This, however, does not militate against this circuit court judgment as being *res adjudicata* as to Leahy. One does not have to be a party to the record to be estopped by a judgment. If he participates in the trial, as it is averred in this answer, then we have *res adjudicata,* or estoppel by judgment, just as fully as if he had been a party. His interest was interlaced with Margaret Harrison et al. They sought the suspension of the Mercantile Trust Company as executor of James Campbell, and Leahy was interested in that suspension. He fought his fight through Margaret Harrison et al. Margaret Harrison et al. quit at the judgment of the circuit court. As to them the judgment became final in the circuit court, and as to them it was *res adjudicata.* It is just as much *res adjudicata* as to Leahy as it is to them, under our rulings. [Titus v. Dev. Co., 264 Mo. l. c. 246 et seq; State ex rel. v. Stone, 269 Mo. l. c. 344, and cases there cited.]

So, whilst Leahy (not being a record party to the action) had no right to appeal, he, owing to the pleaded facts in the present answer, would be bound by the judgment.

VII.   To obviate the situation described above it is urged that there was no right of appeal from the probate court to the circuit court in the case disposed of in the circuit court, and, therefore, no jurisdiction in the circuit court.   This presents a question which is not really discussed in view of our suggestion last above made.   That question is, have we a judgment in the circuit court which can be attacked collaterally?   Absent jurisdiction of parties to an action, and absent jurisdiction of the subject-matter, apparent upon the face of the record, a judgment may be attacked collaterally but not otherwise.   That both the circuit court and the probate court had the parties before them cannot be gainsaid.   The judgment could not be void for want of jurisdiction over the parties.   The subject-matter was the suspension of an executor under a will.   The probate court had jurisdiction of such subject-matter.   It has jurisdiction of all matters relating to estates and their administration.   It had power to appoint, remove and suspend administrators.   It had like power to remove or suspend executors.   [Sec. 2542, R. S. 1919.]   The jurisdiction of both subject-matter and persons was in the probate court, and when that court granted the appeal the law gave the circuit court jurisdiction over appeals from the probate court.   [Clause 4, Sec. 2436, R. S. 1919.]   The circuit court became possessed of both the subject-matter and the parties, and this is true although the probate court committed error in granting the appeal, and the circuit court erred in hearing the same on its merits.   There is a difference between mere error in the course of a case and the absence of jurisdiction which allows a collateral attack upon a judgment.   [15 R. C. L. secs. 310 and 311, p. 835 et seq.]   When this appeal reached the circuit court, such court had the power to say whether or not it was rightfully there.   If it decided wrong, it was a matter of error to be reached on appeal, and not a matter subjecting its judgment to collateral attack, as is insisted upon here.   This be-

Collateral.
Attack.

cause the circuit court is given jurisdiction to hear and determine all appeals granted by probate courts. [Clause 4, Sec. 2436, R. S. 1919.] It may be that at times the appeal may be wrongfully granted, but such fact does not prevent the circuit court, under its jurisdiction to hear such appeals, to determine the matter; and if the circuit court determines the question contrary to law, it is a matter of error and not one of jurisdiction. So, that, without discussing the right of the probate court to grant an appeal (the matter uppermost in the contention of counsel), it is clear that the circuit court had jurisdiction to determine such appeal, and its judgment is not subject to collateral attack. In plain terms, if the circuit court should have dismissed the appeal instead of hearing the case upon the merits, its failure was a mere matter of error and not absence of jurisdiction, because it is given jurisdiction of all appeals granted by the probate courts. The judgment in the circuit court was not subject to collateral attack, and Leahy was bound thereby under the facts pleaded in the answer. If the subject-matter was one over which the probate court had absolutely no jurisdiction, we might have a different case. It did have power to revoke and suspend letters of administration. Suspension is but a limited revocation. There is no statute prohibiting an appeal, and it did grant the appeal. Of all appeals the circuit court had jurisdiction. After that errors and not want of jurisdiction were in the case.

VIII. It is rightfully said by counsel that we did not specifically pass upon the question of the propriety of the probate court in granting the appeal in the matter wherein it suspended the letters of administration to the Mercantile Trust Company. We gave our views upon it and said that we were satisfied with the

Appeal: From Order of Probate Court.

rulings upon other questions which determined the case, and would pass a discussion of that matter. One of those questions was that Leahy could have no interest in the appeal, because

he had not served the estate and could not be entitled to pay. When this was said his time to serve had lapsed by reason of the will having been previously sustained by a dismissal of the plaintiff's appeal in the will contest case. In this opinion the writer's views received the full approval of WOODSON, WALKER and FARRIS, JJ., and in paragraph two of the opinion we had the approval of BOND, J. After properly saying that we did not in the previous case rule on the right of the probate court to grant an appeal in the matter of suspending the letters of administration of the Mercantile Trust Company as executor of Campbell's estate, counsel proceeds to urge that there was no right of appeal. As stated, supra, so far as this case is concerned, it is immaterial whether there was or was not such right. The circuit court having been granted jurisdiction of all appeals from the probate court (Sec. 2436, R. S. 1919) possessed the full power to dispose of that appeal; and if it disposed of it contrary to law, it was an error to be corrected upon appeal. It did not destroy the judgment under a plea of *res adjudicata* as is presented in this case.

We have no reason to dodge even this issue suggested by counsel. Nor do we deny that an appeal is statutory. We do, however, contend that we have statutes which fully justified the Probate Court of St. Louis in granting the appeal from its order and judgment suspending the letters of administration granted to the Mercantile Trust Company. Administrators *pendente lite* hold until the reason for their appointment ceases. They are arms of the court to protect and preserve the estate, not to settle or distribute the same. See note to Davenport v. Davenport, 6 Am. & Eng. Ann. Cases, p. 623 et seq. In the appointment of such administrator, and the suspension of the executor's power to act, the order of suspension may mean the final discharging of the executor, for if the will is defeated such would be the result. Whether or not the judgment of suspension was lawfully made is, in my judgment, appealable under the ninth as well as the

fifteenth clause of Section 282, Revised Statutes 1919. Originally the fifteenth clause was not in this statute. This fifteenth ground appeared for the first time in 1845 and was added for a purpose. That purpose was to cover matters not theretofore covered. These two clauses so far as pertinent read:

"Ninth, on all orders revoking letters testamentary or of administration; . . . fifteenth, and in all other cases where there shall be a final decision of any matter arising under the provisions of Article I to XIII, inclusive, of this chapter."

The suspension of the letters mentioned was, in fact, a revocation of the power of the executor to act. It was, in fact, a revocation either temporary or permanent (owing to result of the will contest) of the letters of administration. We have treated it as a revocation, for FERRIS, J., in State ex rel. Damon v. McQuillin, 246 Mo. l. c. 688, said:

"The statute provides that during a contest the letters of the executor may be revoked and an administrator appointed, *pendente lite;* this, upon the theory that the contest suspends the judgment of the probate court. Proceeding upon this idea, it has been decided in a very recent opinion by LAMM, J., that the application to revoke the letters of the executor, and appoint such administrator, may be made as soon as the petition in the contest is filed, and such is the common practice."

Other cases have like expressions, and the statute, Section 13, Revised Statutes 1919, is not averse to this construction. This statute reads:

"If the validity of a will be contested, or the executor be a minor, or absent from the State, letters of administration shall be granted during the time of such contest, minority or absence to some other person, who shall take charge of the property and administer the same according to law, under the direction of the court, and account for and pay and deliver all the money and property of the estate to the executor or regular administrator when qualified to act."

This provides for the granting of new letters and necessarily contemplates the revocation of the previous letters during the life of the letters to the administrator *pendente lite*. This court has heard and determined appeals such as we had in Campbell's Case and proceeded without question. [Rogers v. Dively, 51 Mo. l. c. 194; Lamb v. Helm, 56 Mo. l. c. 430, where the Rogers Case is reviewed; Achor v. Sullenger, 137 Mo. App. 372.] In the first and last of these cases there was an appeal from the probate court's judgment suspending letters testamentary to the executor in the will where a will contest was on in the circuit court or court of common pleas, and then an appeal by the displaced executor to this court from the judgment of the circuit court. In the last case we transferred the case to the St. Louis Court of Appeals, and our former brother, GOODE, J., wrote the opinion. In the Lamb Case an appeal from a similar order in the probate court was to the circuit court, and from that brought to our court on writ of error. Not until the case of Leahy v. Campbell has it been seriously urged by bar, or seriously considered by bench, that an appeal did not lie in a case of this character. The only case cited by my learned brother, State ex rel. v. Moehlenkamp, 133 Mo. l. c. 138, does not rule that an appeal does not lie. Evidently in urging their right to prohibition counsel in that case suggested that there was no appeal, and what BURGESS, J., said was in response to that matter. Suffice it to say that he did not rule that an appeal would not lie. He simply ruled that the probate court had jurisdiction and prohibition would not lie, because such writ cannot be made to perform the functions of an appeal, a writ of error or a *certiorari*, its purpose being not to correct errors but to prevent an usurpation of jurisdiction.

This opinion is valueless on the question. The fact that both bench and bar have recognized this right to appeal from a judgment of suspension, as indicated by the cases cited, would be very persuasive even without the language of the two clauses of the statute, supra.

Not only so, but in Hanley v. Holton, 120 Mo. App. 399, we have a case where the administrator *pendente lite* moved to have the suspended executrix to make settlement; and the motion being overruled, an appeal was allowed and the Court of Appeals held that it was a final judgment and came under the fifteenth clause of Section 282, supra. The circuit court had dismissed the appeal on the ground that it should never have been allowed. See also In re Estate of Rooney, 163 Mo. App. l. c. 393; McCrary v. Menteer, 58 Mo. 446. In State ex rel. Alderson v. Moehlenkamp, 133 Mo. l. c. 138, 139, it is said:

"By this statute it is perfectly clear that the probate court had authority to suspend the functions of the executor named in the will and to appoint an administrator pending the contest. . . .

"The controlling question, however, is one of jurisdiction in the probate court. It was for that court to determine from the evidence before it whether there was a proceeding pending at that time in the Circuit Court of St. Charles County, contesting the will of Benjamin A. Alderson, deceased, and this court cannot assume its functions and determine in this extraordinary proceeding whether or not its rulings were correct. If error was committed in its rulings it cannot be corrected by this proceeding. [State ex rel. v. Withrow, 108 Mo. 1; State ex rel. v. Burckhartt, 87 Mo. 533.]"

Note the language: "It was for that court" (the probate court) "to determine from the evidence before it whether there was a proceeding pending, " etc. The determination of an issue upon evidence in a court is a judgment, and in this instance a final judgment. This brings it under the fifteenth clause of Section 282, supra.

It is urged by counsel, and sustained by authority, that even though Section 282, Revised Statutes 1919, does not cover this appeal, yet it is covered by Section 2436, Revised Statutes 1919, which, so far as applicable, reads: "Fourth. Appellate jurisdiction from the judgment and orders of county courts, probate courts and

justices of the peace, *in all cases not expressly prohibited by law,* and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind.'' In the foregoing quotation the italics are ours.

In Brockman v. Webb, 189 Mo. App. l. c. 476, it is said:

''We think it was error to dismiss the appeal. Defendant says that the only right of appeal from the probate court to the circuit court is found in Section 289, Revised Statutes 1909, and that that section does not authorize an appeal from the judgment of a probate court setting aside a judgment rendered by that court. Passing by this position without decision, we find that that section is not the only statute on appeals from the probate court. Under the title 'Circuit Courts,' Section 3956, fourth subdivision of the statute, an appeal lies from the judgments and orders of the probate court to the circuit court 'in all cases not expressly prohibited by law.' In this case the probate court had rendered a judgment of allowance of a demand against an estate. Afterwards the administrator filed a motion to set aside and annul such judgment and it was so ordered by the probate court. We think it clear that an appeal lies to the circuit court in such an instance. [Coleman v. Farrar, 112 Mo. 54, 72; Stanton v. Johnson's Est., 177 Mo. App. 54.]''

The authorities and statutes justify our remarks in Leahy v. Campbell, supra, wherein we said that we thought the right to appeal could be ''demonstrated with the accuracy and precision of an Indian's arrow.'' From the cases we have cited, supra, both bench and bar proceeded upon the theory that an appeal did lie from an order suspending or revoking temporarily the letters of administration of an executor in a will pending an alleged will contest. Not only so, but our own records show that numerous applications were made to this court for pro-

hibition and other original writs in this very case, by which it was sought to stop the hearing of the appeal from the probate court to the circuit court, and this court denied the writs. If the appeal was without authority of law and beyond the jurisdiction of the circuit court, our writ of prohibition should have issued. We denied it, and such judgment is persuasive, at least, here.

IX. We have discussed, supra, the failure to give a statutory bond under the failure of the petition to state a cause of action. This matter is specially pleaded as a defense in the fourth paragraph of the answer. We need add but little to what we have already said. The giving of a statutory bond is a condition precedent to taking over the estate. [State ex rel. v. Holtcamp, 168 Mo. App. l. c. 410, et seq.] It would be a dangerous precedent to permit a probate court to turn over to an administrator a vast estate upon a mere nominal bond. Such is against the public policy of this State, as expressed in our statutes. Section 17, Revised Statutes 1919, contemplates the giving of the statutory bond upon the issuance of the letters. By express provision of Section 19, Revised Statutes 1919, the same bond is required of one who administers pending a contest of a will. In State to use v. Price, 15 Mo. l. c. 378, it is said: "The grant of the letters and the execution of the bond are, under our law, parts of one and the same transaction, and the different acts may be brought together to show what was intended." The reference is to the statutory bond required of an executor or administrator, and by Section 19 of Article I, Revised Statutes 1919, an administrator *pendente lite* is required to give a like bond and in like time. If we read Section 12 of Article I, Revised Statutes 1919, we find that where two or more executors are appointed "none shall have authority to act as such or intermeddle, except those who give bond." And under Section 19, supra, the requirement is for the administrator *pendente*

*Failure to Give Statutory Bond.*

*lite* to give bond in the same manner as the suspended executor. If the executor who fails to give the required statutory bond cannot act or intermeddle with the estate, neither can the administrator *pendente lite,* for like reasons.

Other questions are presented by the answer, but we shall go no further. The judgment should be affirmed.

It is so ordered: *Walker* and *Higbee, JJ.,* concur; *David E. Blair* and *James T. Blair, JJ.,* concur in result; *Elder, J.,* dissents in separate opinion in which *Woodson, C. J.,* concurs.

ELDER, J. (dissenting).—Having written the opinion in Division One which was rejected by Court in Banc, and still finding myself at variance with the views expressed by GRAVES, J., in the majority opinion filed herein, I am taking the liberty of filing this opinion as a dissent, the same being substantially similar to the divisional opinion.

GRAVES, J., having adopted the writer's statement of facts, it will be unnecessary to here repeat the same. For the facts reference is hereby made to the majority opinion.

I. At the threshold of our inquiry into the merits of plaintiff's appeal we are met with objections filed by defendant to the abstract of the record. For ground of objection defendant states that the abstract fails to show that plaintiff ever filed any motion for new trial or in arrest of judgment, and that consequently there is nothing before this court for review.

The cause was submitted in the court below upon the petition, the answer, and plaintiff's and defendant's respective motions for judgment on the pleadings. Plaintiff's motion was overruled, while defendant's motion was sustained and final judgment rendered in its favor. To this ruling of the court plaintiff excepted and duly filed a bill of exceptions,

Motion for Judgment on Pleadings: In Effect a Demurrer.

making both motions a part of the record. The motions raised a question of law. Defendant's motion went to the sufficiency of plaintiff's cause of action, while plaintiff's motion attacked the adequacy of the defense set up in defendant's answer.

While we are fully aware of the line of decisions which tend to hold, without assigning any substantial reason therefor, that a motion for judgment on the pleadings is not the same as a demurrer, nevertheless, the common sense view to take of the matter is that such a motion, for all practical purposes, performs identically the same functions as a demurrer, and that a motion for a new trial is not therefore necessary to bring the propriety of the judgment before the appellate court. This question was presented and squarely passed upon in Todd v. Mo. Pac. Ry. Co., 33 Mo. App. l. c. 114, and our conviction in the matter finds further recognition in O'Connor v. Koch, 56 Mo. 253.

However, from the view we take of the case before us, the question is really immaterial, and we content ourselves by passing to the real questions involved.

II.  Coming then to the real matters at issue, and directing our attention to each of the further points raised by defendant, we find it first urged **Res Adjudicata.** that the case of Leahy v. Campbell, 274 Mo. 343, is *res adjudicata* of the instant suit.

Learned counsel for defendant contend that Leahy v. Campbell, supra, decided the following issues now said to be presented, viz.: (a) That the executor and beneficiaries could appeal from the order of the probate court suspending the letters of the executor; (b) that plaintiff herein never legally qualified and never became administrator *pendente lite,* because he never gave the bond required by law; and (c)  that plaintiff herein is not entitled to compensation because he rendered no services as administrator *pendente lite.*

An examination of the opinion in Leahy v. Camp-

bell shows that this court stated two propositions: First, that plaintiff herein, not being a party to the proceeding there under review, had no right to appeal from the decision of the circuit court; second, that the case there presented was but a moot case. However, what this court *decided* in Leahy v. Campbell was that the appeal of plaintiff therein should be dismissed, the order of dismissal being predicated upon the fact that plaintiff therein was not a party to the suit. This court having refused to assume jurisdiction, it is manifest that what was there said upon matters other than those relevant to the ground of dismissal were but *obiter*. Accordingly, it cannot now be successfully contended that Leahy v. Campbell is decisive of this case, which presents many questions not then before us. Nor did the dismissal of the appeal in that case serve to extinguish plaintiff's present cause of action. [18 C. J. p. 1208, par. 143.]

III. Analyzing the allegations of plaintiff's petition it will be observed that the salient averments are: (1) That Margaret C. Harrison and others instituted a will contest in the circuit court; (2) that pursuant to a motion filed in the probate court plaintiff herein was appointed administrator *pendente lite;* (3) that plaintiff gave bond in the sum of $10,000 and was ready, willing and able to give an increased bond of $10,000,000; (4) that plaintiff demanded and defendant refused to deliver possession of the assets of the estate, by reason of which plaintiff was damaged; (5) that defendant received and withheld from plaintiff the commissions to which plaintiff claims he was rightfully entitled.

*Issues Made by the Pleadings.*

An analysis of the somewhat lengthy answer, aside from the admissions and denials contained therein, shows the material allegations to be: (1) That the proceeding brought by Margaret C. Harrison and others was not a will contest, for the reason that none of the plaintiffs therein were heirs at law of James Campbell

or interested in his estate; (2) that the judgment of the circuit court setting aside the order of the probate court suspending the letters testamentary of defendant and appointing plaintiff administrator *pendente lite* is *res adjudicata;* (3) that the appointment of plaintiff as administrator *pendente lite* was void for the reason that he never gave bond for an amount "not less than double the amount of the estate;" (4) that the case of Leahy v. Campbell, 274 Mo. 343, is *res adjudicata*; (5) that plaintiff is not entitled to any compensation for the reason that he rendered no services as administrator *pendente lite*; (6) that whatever right plaintiff had to demand delivery to him of the assets of the estate was vested in him solely as administrator *pendente lite*; (7) that the probate court alone had jurisdiction to make an allowance for compensation to plaintiff; (8) that plaintiff lost his right to compensation by failing to have the same fixed before final settlement of the estate; (9) that if plaintiff is entitled to compensation his claim is against the estate, and not against defendant.

The adjudication of this court in Leahy v. Campbell we have adverted to above. The remaining defenses set up in the answer we shall discuss in the paragraphs following.

IV. It is urged that as plaintiff did not give bond in an amount "not less than double the amount of the estate" he never qualified as administrator *pendente lite*.

Bond.

Section 21, Revised Statutes 1909 (now Sec. 13, R. S. 1919), makes it the duty of the probate court to appoint an administrator *pendente lite* when the validity of a will is contested. Said section makes no mention of bond. However, by Section 25, Revised Statutes 1909 (now Sec. 17, R. S. 1919), it is provided that the court shall take a bond of persons to whom letters of administration are granted in "not less than double the amount of the estate." Nothing is said about bond be-

ing given before the administrator enters upon his duties, nor that the appointment shall be void unless the administrator gives the required bond within a specified time. In State ex rel. v. Churchill, 41 Mo. 42, a statute requiring county treasurers to give bond within ten days after their election or appointment was held to be merely directory, the court saying:

"The bond was not void, nor voidable, merely because not presented and filed within the ten days. This provision of the statute is directory only. The matter of time was not essential to the validity of the bond, nor a condition precedent to the party's title to the office."

In Aiken v. Sidney Steel Scraper Co., 197 Mo. App. 673, l. c. 681, the Kansas City Court of Appeals, following 23 Am. & Eng. Ency. Law (2 Ed.) 355, and State ex rel. v. Churchill, supra, states the proposition thus:

"'The failure of a person duly elected or appointed to an office to take the prescribed oath or give a bond, as required, or either, does not, when he has proceeded to exercise the functions of the office, invalidate his acts so far as the public or third persons are concerned. As to them, his acts are as valid as though he were an officer *de jure*. His title to the office cannot be attacked collaterally, but only by direct proceedings in the nature of *quo warranto*. The failure to qualify constitutes a ground for ousting him from the office.' A failure to qualify by filing a bond when required, does not vacate the office."

The reasoning of these decisions demonstrates that the giving of an administration bond is not mandatory. but directory only, and that the failure to give bond cannot furnish the basis of a collateral attack on the title to the office. That the probate court has ample authority to protect heirs and those interested in the administration of estates from loss, on account of failure on the part of the administrator to furnish bond, or on account of insufficient bond, is attested by the various sections of the administration statute giving the court

power to revoke the letters of the administrator or to require a new bond.

In the instant case the petition of plaintiff recites that the probate court fixed plaintiff's bond "for the time being at the sum of $10,000, to be increased upon receiving the assets of the said estate to the sum of $10,000,000, and that thereupon and on the same day, the plaintiff, as such administrator *pendente lite,* tendered his bond in the sum of $10,000, which, being examined by the said court, was accepted, approved and filed; and that thereafter, to-wit, on the 23rd day of October, 1914, the plaintiff having arranged for and being then ready, willing and able to give the increased bond of $10,000,000, and having so advised the defendant, made demand upon defendant for the delivery to him of the personal property," etc. From this allegation it is manifest that plaintiff did everything possible towards complying with the order of court. By such order he was not required to give the $10,000,000 bond until he had received the assets of the estate. According to the petition he had arranged for and was ready and willing and able to give the said bond, and so advised defendant. Defendant, however, refused to deliver the assets. Therefore, plaintiff cannot be said to have been in default when defendant itself rendered it impossible for him to comply with the condition precedent upon which additional bond was required of him. Accordingly, Section 25, Revised Statutes 1909 (now Sec. 17, R. S. 1919), being but directory, and there being no statute declaring it mandatory upon an administrator *pendente lite* to give bond in double the amount of the estate *before* entering upon the duties of his office, and plaintiff in this case having fully complied with the order of the probate court as to bond, we are of the opinion that defendant's insistence is not well founded.

V. It is pressed upon us that plaintiff's claim, if any, is vested in him as administrator *pendente lite,* and

not as an individual; that such claim is one against the
estate of James Campbell and not against de-
fendant; that it should have been presented
to the probate court before final settlement
was made; and that the probate court alone had juris-
diction to make an allowance to plaintiff.

Character
of Claim.

Preliminary to a consideration of these defenses it
is important that we examine the meaning and effect of
Section 21, Revised Statutes 1909 (now Sec. 13, R. S.
1919). Said section, so far as apposite to this proceed-
ing, provides that:

"If the validity of a will be contested . . . let-
ters of administration shall be granted during the time
of such contest . . . to some other person, who shall
take charge of the property and administer the same
according to law, under the direction of the court, and
account for and pay and deliver all the money and prop-
erty of the estate to the executor or regular adminis-
trator when qualified to act."

The petition before us alleges that Harrison and
others instituted a proceeding in the circuit court "in
the nature of a will contest, wherein they drew into
question the validity of the said purported will of the
said Campbell, deceased, and prayed the framing of an
issue thereon, and that upon the hearing of such issue
it should be determined that the said alleged will was
not in truth and fact the will of the said Campbell, de-
ceased." Clearly this averment characterized the said
proceeding as a will contest. In the answer of defend-
ant it is asserted (and is here insisted) that the Har-
rison suit was not a will contest, for the reason that none
of the plaintiffs therein were heirs at law of James
Campbell or interested in his estate. This but joins is-
sue with the allegation of the petition as to the Harri-
son suit being a will contest, and tenders a question of
fact. Clearly, therefore, as to that matter the circuit
court was in error when it entered judgment on the
pleadings for defendant. And moreover, the propo-

296 Mo.—39.

sition as to whether the plaintiffs in the case had an interest in the estate was a question to be decided in the circuit court, and not by the probate court. Accordingly, upon the filing of the petition in the will contest suit, the authority of defendant as executor was suspended, and, upon the suit being brought to the attention of the probate court, it became the duty of that court under Section 21 aforesaid, to appoint an administrator *pendente lite*.

As said in State ex rel. v. Moehlenkamp, 133 Mo. l. c. 138: "By this statute" (Section 21) "it is perfectly clear that the probate court had authority to suspend the functions of the executor named in the will and to appoint an administrator pending the contest."

As stated in Johnson v. Brewn, 277 Mo. l. c. 397: "Section 21 does not provide that when a contest is filed the probate court shall revoke the order admitting the will to probate and granting letters testamentary; it only provides that the court *shall appoint a temporary administrator*. The obvious inference is that the probate court is powerless to revoke the order, because the order is already vacated by the filing of the suit to contest. The probate court retains jurisdiction of the estate and *should appoint a temporary administrator to administer it*. But the jurisdiction of all questions pertaining to the probate of the will are transferred by the contest to the circuit court. . . . The will must still be proved or rejected in the circuit court." (Italics ours.)

And in accordance with the further doctrine declared by Johnson v. Brewn, supra, upon the filing of the Harrison suit to contest the Campbell will, the executor of said will, defendant herein, could exercise no further authority thereunder pending the termination of the contest. Therefore, defendant having continued to hold the property of the estate and to administer thereon, and having received the commissions alleged, such claim as plaintiff may have had became a claim personal to him, against defendant rather than against the estate. It

follows that the probate court was without jurisdiction to adjudicate the said claim.

VI.   It is earnestly stressed by defendant that as an appeal was taken to the circuit court from the order of the probate court suspending the letters testamentary granted defendant, and as the circuit court set aside said order and reinstated defendant as executor, plaintiff is barred from prosecuting his claim. This contention calls for a decision of the question as to whether or not the right of appeal existed from the order of suspension made by the probate court.

Appeal.

In support of its position that an appeal lies, defendant cites the cases of Lamb v. Helm, 56 Mo. 420; Rogers v. Dively, 51 Mo. 193; and Achor v. Sullenger, 137 Mo. App. 372.   An examination thereof shows that none of said cases are in point.   All merely go to the question of the authority of the probate court, in the event of a will contest, to suspend the functions of the executor and to appoint an administrator *pendente lite.*

Defendant also relies upon Leahy v. Campbell, 274 Mo. l. c. 361.   What this court there said was this: "Whilst I think it can be demonstrated with the accuracy and precision of an Indian's arrow, that an appeal will lie from the probate court to the circuit court from an order suspending the letters testamentary of an executor under a will, yet if either of the two propositions above is well founded, such a discussion would be a useless one, and we therefore pass it."

Unmistakably this language cannot be construed as an adjudication that an appeal does lie.   The point was not decided, and it is specifically so stated.

In Johnson v. Brewn, 277 Mo. 392, however, this court did enunciate a principle, being guided by a line of former decisions, which is controlling in this case. We there held that the filing in the circuit court of a suit to contest a will, *ipso facto,* operates to vacate an order of the probate court admitting the will to probate,

without any formal order of revocation by the probate court, and that the power and rights of the executor are automatically suspended pending the will contest. We further held that "the probate court retains jurisdiction of the estate and should appoint a temporary administrator to administer it." This ruling was made in the light of Section 21, Revised Statutes 1909 (now Sec. 13, R. S. 1919), pursuant to which plaintiff herein was appointed administrator *pendente lite*. Applying such rule to the instant case: If, therefore, the filing of the Harrison suit in the circuit court *ipso facto* operated to suspend defendant's authority as executor, and if it thereupon became mandatory upon the probate court to appoint an administrator *pendente lite*, it is obvious that an appeal to the circuit court from the order suspending defendant's letters testamentary and appointing plaintiff administrator *pendente lite* would be an ineffectual and useless proceeding. The law never contemplates that an ineffectual or useless thing be done.

That an order suspending the letters of an executor and appointing an administrator *pendente lite* is not appealable has been inferentially held by this court in State ex rel. v. Moehlenkamp, 133 Mo. l. c. 138, wherein BURGESS, J., said:

"The probate court having jurisdiction under the statute over the relator as executor, and the authority to suspend him as such executor pending the contest of the will of his testator, it makes no difference that the orders suspending him and appointing an administrator pending the will contest may not have been appealable. If the court had jurisdiction, as we hold that it had, then the authority to appoint an administrator to take charge of the estate while the suit is pending followed as a sequence, and although it may have erred in its rulings, prohibition will not lie. If the orders were not appealable, the action of the court, had relator desired that it be done, might have been reviewed by proceeding by *certiorari*."

It is our opinion that the right of appeal was not open to defendant, and that the circuit court erroneously assumed jurisdiction and set aside the order of the probate court.

VII. It is finally claimed that plaintiff is not entitled to any compensation for the reason that he rendered no services as administrator *pendente lite.*

As we have hereinbefore pointed out, upon the filing of the will-contest suit it became the imperative duty of the probate court, under Section 21, Revised Statutes 1909 (now Sec. 13, R. S. 1919), to appoint an administrator to administer upon the estate during the pendency of such suit. The powers of defendant as executor were at once suspended by operation of law. That being true, plaintiff, the administrator appointed, became entitled to the possession of the assets of the estate, and to administer upon them so far as required. As an incident to his office he was entitled to reasonable compensation for any services performed by him. [Hawkins v. Cunningham, 67 Mo. 415.] If defendant wrongfully refused to surrender the assets to him, and he was thereby prevented from rendering any services in connection with the administration of the estate, and from earning the commissions to which he would have become entitled, for the wrong so done defendant should be made to respond to the extent of the damages suffered. An inquiry into the amount of such damages is, however, not before us, for the reason that both defendant's and plaintiff's motions for judgment on the pleadings raised only a question of law as to the legal sufficiency of the facts pleaded. And we are convinced, after a careful and painstaking consideration, that the facts pleaded in defendant's answer do not constitute a complete defense to plaintiff's claim. Therefore, the circuit court erred when it rendered final judgment for defendant. What should have been done was for defendant's motion for judgment on the pleadings to have been over-

ruled, the same as was plaintiff's like motion, and for plaintiff to have then been given an opportunity, if desired, to reply to the answer of defendant. If plaintiff failed in this, it would then have been proper to proceed to final disposition of the case.

Having concluded all the questions raised, and entertaining the views above indicated, it is our opinion that the judgment should be reversed and the cause remanded with directions to the circuit court to overrule defendant's motion for judgment on the pleadings and to reinstate the cause for further proceedings not inconsistent herewith. *Woodson, C. J.*, concurs.