# THE STATE ex rel. CITIZENS BANK OF WARREN-TON v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

### In Banc, December 30, 1922.

1. **WILL: Pretermitted Heirs: Bequest to Wife: Not Void as a Whole.** The mere omission of the names of heirs, where a legal distributee is named, does not render the will totally void. A will by which testator gave his entire estate, which consisted of personal property alone, to his wife, who under the statute is likewise a distributee, was not totally void, although it did not mention his children. The legacies to her were not nullities, and the pretermitted heirs are entitled to contribution from her of only their proportionate part of the estate. [Distinguishing Burch v. Brown, 46 Mo. 441.]

2. ———: ———: ———: **Power of Executrix to Pay Legacies.** Where the will gave to testator's wife his entire estate, consisting wholly of personalty; and failed to mention his children, and she qualified as executrix, and though no creditor's demands were presented or allowed, she paid all his debts out of the proceeds of life insurance policies naming her as beneficiary, the debts thus paid amounting to more than twice the value of his estate, she had the right, without an order of the probate court, to have transferred to her certain bank stock, owned by testator at the time of his death, in discharge of the legacy bequeathed to her by the will, and the pretermitted heirs are not entitled to recover from the bank said stock, or in the event of its subsequent sale by her to others, to recover its value from the bank. After the executrix qualifies she can proceed to dispose of the estate as the will directs, without an order of the probate court, and especially so where there are no estate debts, or she has out of her own funds paid them, for the debts having been discharged it becomes her duty to discharge the legacies as the will directs.

3. ———: ———: ———: ———: **Bank Stock: Suit Against Bank: Statute: Refund: Partition: Contribution.** The statute (Sec. 514, R. S. 1919) says that pretermitted heirs shall be entitled to such proportion of testator's estate "as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part," and this statute fixes the remedy of pretermitted heirs, and by using the word "refund" contemplates the previous payment of legacies, and where

the entire estate disposed of by the will was personal property the remedy is a proceeding for compulsory contribution. An action against the bank for the value of certain stock owned by testator and transferred by it to the wife, who was the executrix and the sole legatee named in the will, and who after discharging all estate debts, without an order of the probate court, directed the bank to transfer the stock to her individually, which was accordingly done. cannot be maintained. The widow and executrix having by the will and the transfer acquired title to the certificates of stock, her later transfers thereof were valid, and the remedy of the pretermitted heirs was not an action against the bank, and was not a proceeding in the probate court for partition of the stock, but was one for compulsory contribution under the statute.

## Certiorari.

JUDGMENT OF COURT OF APPEALS QUASHED.

*Jesse H. Schaper, Emil P. Rosenberger, J. W. Delventhal* and *E. E. Schowengerdt* for relator.

(1) The will was not invalid or the bequest of stock to testator's wife (who would take a distributive share in the event testator died intestate) was not a nullity because of the fact that there were pretermitted heirs, and the respondents, in holding that the bequest of said stock to the widow was ineffective and a nullity, have failed to follow the law announced in the latest controlling decisions of the Supreme Court on this question. Hill v. Martin, 28 Mo. 78, 81; Schneider v. Koesiter, 54 Mo. 500. (2) The executrix, under the statute (Sec. 207, R. S. 1919) and the law, was authorized to assign, without an order of the probate court, the bank stock in question to the legatee named in the will in discharge of such legacy, and the respondents, in holding that an assignment of stock could not be made by an executrix without an order of the probate court, pursuant to the terms of the will, to the legatee named in the will, in discharge of such legacy, have failed to follow the rule announced in the latest controlling decision of the Supreme Court on

this question. Wolff v. Berning, 74 Mo. 96; Stagg v. Linnenfelser, 59 Mo. 336; Chandler v. Stephenson, 68 Mo. 450. (3) A testator may, by his will, confer upon his executrix the power to assign, sell or dispose of his property for any purpose to which he wishes his property applied, and in such a case an order or license of the probate court is not necessary, and the respondents, in holding that the testator could not confer such authority or power on his executrix, have failed to follow the rule announced in the latest controlling decisions of the Supreme Court on this point. Whisker v. Rishe, 167 Mo. 532. (4) Partition was not the proper proceeding for the pretermitted heir to adopt to obtain his interest in the personal estate, because the specific personal property sought to be partitioned had been previously assigned and delivered by the executrix, pursuant to the specific bequest in the will, to the legatee named in the will (said legatee being a person who would take a distributive share in the event testator had died intestate), who had sold the same to third parties and retained the proceeds, but the remedy of such pretermitted heir was against the specific legatee who had received such property for contribution (Secs. 514, 554, R. S. 1919), and the respondents, in holding that partition was the proper procedure under these facts have failed to follow the rule announced in the latest controlling decisions of the Supreme Court on this question, as follows: Schneider v. Koester, 54 Mo. 500; Hill v. Martin, 28 Mo. 81; Burch v. Brown, 46 Mo. 441; Levin v. Stevens, 7 Mo. 90. (5) The probate court was without jurisdiction to render a judgment for the partition in kind of the stock in question between Catherine Koelling and the pretermitted heirs, because said property had passed out of the possession of the estate and out of the possession of each and all of the parties to said proceedings, two years prior to the institution of such partition proceedings, and such property was at the time held, in the possession of and claimed adversely by third parties, and the re-

spondents, in holding that the probate court had juris-
diction to partition said stock in kind failed to follow
the rule announced in the latest controlling decisions of
the Supreme Court on the question in point.    Hutson
v. Hutson, 139 Mo. 229, 235;  Colvin v. Hanenstein, 110
Mo. 575, 582;  Lambert v. Blumenthal, 26 Mo. 471, 474;
Armour v. Frey, 253 Mo. 447, 480; Shaw v. Gregoire, 41
Mo. 407, 410;  Chamberlain v. Waples, 193 Mo. 96, 110;
Waddle v. Frazier, 245 Mo. 402.

*William Waye, Jr.,* for respondents.

(1)  In failing to name or mention any of his children
in his will, the testator died intestate as to such children
and as to them there was no will.   And respondents in
holding said will ineffective as to said children followed
the latest controlling decisions of the Supreme Court.
Bradley v. Bradley, 24 Mo. 311, 319;  Burch v. Brown,
46 Mo. 441; Meyers v. Watson, 234 Mo. 286;  Dobschutz
v. Dobschutz, 279 Mo. 120.   (2)  The ruling of respond-
ents that an assignment of stock could not be made by an
executrix under Section 207, Revised Statutes 1919, with-
out an order of the probate court was in answer to the
point made in the Court of Appeals that relator had paid
certain debts of the deceased and was thereby subrogated
to the rights of said creditors.   In such ruling, respond-
ents followed the latest controlling decisions of the Su-
preme Court.   (3)  The respondents, in holding that the
testator could not confer on his executrix the power to
assign or sell said stock, followed the prior decisions of
the Supreme Court.   Authorities cited above.   (4) Par-
tition was the proper proceeding for the pretermitted heir
to adopt to obtain his interest in the bank stock left by
testator and said respondents, in holding that partition
was the proper procedure, followed the rule announced
in the latest controlling decisions of the Supreme Court.
Schaper's Executor v. Schaper, 158 Mo. App. 609;
Breidenstein v. Bertram, 198 Mo. 328; Dobschutz v

Dobschutz, 279 Mo. 120; Vantine v. Butler, 250 Mo. 451. (5) At the time of such partition proceedings said bank stock was not held adversely by third parties, and the probate court had jurisdiction to partition said bank stock in kind between the widow and pretermitted heirs of the testator. And respondents, in holding that the probate court had jurisdiction to partition said stock, followed the latest controlling decisions of the Supreme Court. Sec. 239, R. S. 1919; State ex rel. v. Ewing, 264 Mo. 331; Aull v. St. Louis Trust Co., 149 Mo. 1; 14 C. J. 478, 479; Armour Brothers Banking Co. v. National Bank, 113 Mo. 12; Bank v. Royalty Co., 259 Mo. 637, 648. (6) Where shares of stock have been illegally transferred by the officers of a corporation, a bill in equity will lie to compel the corporation to issue to the true owner proper certificates for such stock, and also to pay to him the dividends received on the shares illegally transferred. Trimble v. Bank, 71 Mo. App. 407; Telegraph Co. v. Davenport, 97 U. S. 369; Withers v. Bank, 67 Mo. App. 115, 120; Keller v. Eureka Brick Machine Mfg. Co., 43 Mo. App. 84; Pratt v. Boston & Albany Railroad, 126 Mass. 443; Chicago Edison Co. v. Fay, 62 Ill. App. 55; Sewall v. Boston Water Power, 86 Mass. 277; Booth v. Taunton Coffee Company, 123 Mass. 110; Pollock & Pollock v. National Bank, 7 N. Y. App. 274; St. Romes v. Levee Steam Cotton Press Company, 127 U. S. 614, 619; Geyser-Marion Gold Mining Co. v. Stark, 53 L. R. A. 687; 20 Ency. Pleading & Practice, 812, 813, 814; Chicago Edison Co. v. Fay 164 Ill. 323.

GRAVES, J.—*Certiorari* to St. Louis Court of Appeals. Relator is a banking corporation at Warrenton, Missouri. Taking the opinion of the Court of Appeals for the evidenciary facts, it would appear that one Theodore Koelling died in Warren County in April, 1913, owning at the time some nineteen shares of stock in relator bank. Koelling left a will, but in it did not mention his three children. His wife was the sole beneficiary

under his will. There were three cases, each having for a plaintiff one of the pretermitted children. They were consolidated and heard as one. As we get the facts from the Court of Appeals, it will be best to let its opinion speak. Taking the case of one child (Carl C. Koelling) the Court of Appeals says:

"Plaintiff by a bill in equity seeks an order and decree of the court compelling defendant bank to transfer upon its books to plaintiff five shares of its capital stock, to issue to plaintiff a certificate for same, and to pay plaintiff the dividends earned thereon from March 18, 1915.

"After alleging the incorporation of the defendant, the bill states that Theodore Koelling died in Warren County, Missouri, on the 24th day of April, 1913, leaving a last will and testament, which was duly probated by the probate court of said county on April 28, 1913; that said Theodore Koelling died leaving the following heirs: The plaintiff Carl C. Koelling, Clara Stadtmann and Frederick Koelling, his children, and Catherine Koelling, his wife. That the children, including the plaintiff, were not named or provided for in said last will, and said Theodore Koelling died intestate as to said plaintiff and the other named children, and that the plaintiff became on the death of said Theodore Koelling entitled to such proportion of the estate of Theodore Koelling, real and personal, as if the said Koelling had died intestate, and was entitled to have the same assigned to him.

"It is alleged that letters testamentary on the estate were duly issued to Catharine Koelling, the widow, who qualified as executrix, made due publication of notice of said letters, and that all demands and claims against said estate have been duly paid and satisfied. That said Koelling died possessed of certain personal property, namely, nineteen shares, of the par value of $100 each, of the capital stock of the defendant bank, which stock was not needed for the payment of the debts, demands and claims against the estate of Theodore Koelling. That

296 Mo.—41.

on November 13, 1917, said shares of stock were duly partitioned in kind by the probate court between the widow, Catharine Koelling, who was the sole beneficiary in the will, and the children and heirs at law of said Koelling, deceased, and that in said partition five shares of the capital stock of the said bank were allotted and assigned to plaintiff, who is now the owner thereof.

"It is then alleged on March 18, 1915, the defendant, without any right or lawful authority so to do and without the consent, authority or knowledge of the plaintiff, transferred on the books of the defendant bank, to parties unknown, said nineteen shares of its capital stock, and which nineteen shares included the five shares of stock assigned and now owned by the plaintiff. That said defendant, without any right or lawful authority so to do, and without the consent, authority or knowledge of this plaintiff, surrendered the certificates of stock that had been issued by the defendant to and in favor of said Koelling for said nineteen shares, and said defendant issued a new certificate in lieu thereof to parties unknown to plaintiff. That the defendant refused to recognize the plaintiff as the owner of said five shares and refuses to pay him the dividends declared and due thereon.

"It is then alleged that since March 18, 1915, defendant has earned and declared a dividend of $10 per share annually, and that there is now due plaintiff the sum of $200 for dividends so declared. That plaintiff made demand on defendant to record, issue and deliver to him a new certificate for said five shares of stock and to make proper entry on the books of the defendant bank, and that plaintiff has made demand on defendant to pay to him the dividends earned and declared on said stock, all of which defendant has refused and still refuses to do. It is further alleged that the value of said shares of stock owned by plaintiff is the sum of $1125; that by reason of the said acts of the defendant plaintiff has been damaged in that sum.

"The prayer seeks an order on the defendant to issue

and deliver to plaintiff a certificate for said five shares of stock, also to pay the plaintiff the sum of $200 due plaintiff on account of dividends earned on said stock, and that in the event defendant refuses or fails to do so it be ordered and decreed that it pay to the plaintiff the sum of $1325, the alleged value of said stock and dividends.

"The chancellor found the facts substantially as alleged by plaintiff in his petition, and granted a decree in favor of plaintiff as prayed.

"The evidence tended to prove the facts as alleged in the petition. Other facts material to the issues are these: The deceased, Theodore Koelling, had been cashier of the defendant bank from the date of its organization in 1903 until the time of his death. His estate consisted of an equity in some city lots in the town of Warrenton of the value of about $700, also an equity in certain Texas land, out of which nothing was realized. His personal property consisted of nineteen shares of the capital stock of the defendant bank, valued at the time at $165 per share, and life insurance to the extent of $3000, and a small amount of cash, which made a total value of his estate of $6288.95.

"No debts were proved up against his estate in the probate court, but it appears from the evidence that he had considerable debts, amounting to about the sum of $12,000. Some of these seems to be, under the evidence, of doubtful character, but most of them were evidenced by promissory notes executed by the deceased, Theodore Koelling. None of these debts became lawful claims against the estate, inasmuch as they were never presented to and allowed by the probate court.

"Theodore Koelling executed his will a few months before his death, by which he bequeathed and devised to his wife Catherine Koelling, after the payment of his debts, all of his property, real and personal, including the nineteen shares of the capital stock of the defendant bank. In his will he made a specific bequest of his

stock to her. She was appointed executrix of the will with full power in her to sell, dispose of and convey any and all of said property by deed or otherwise. The testator did not name the plaintiff or his other children in said will, and as to them of course, under the provisions of our law, he died intestate. After the widow had qualified as executrix she consulted with Mr. E. L. Delventhal, an attorney and cashier of the defendant bank, who was a witness to the will and familiar with its contents, with reference to the estate, and through his counsel and advice she concluded to pay all of the debts, using the funds of the estate for that purpose, and also her own funds coming to her from insurance policies on the life of her husband. Mr. Delventhal testified that this arrangement was made at her suggestion in order to protect the good name of her husband, and Mrs. Koelling testified she did it upon the advice of Mr. Delventhal, and she knew nothing about the matter, but followed his counsel in all things. None of the debts referred to were allowed by the probate court or presented to the probate court for allowance, but alleged debts of the deceased, Theodore Koelling, were paid by the executrix to the extent of $12,585.95. She used the estate's money and also her own funds derived from insurance policies on her husband's life for the purpose. Most of these debts appear to have been evidenced by promissory notes signed by Theodore Koelling, and among the notes so paid the defendant bank held notes of Theodore Koelling to the extent of $4800. The smaller items consisted of doctor's bills and funeral expenses. One of the notes which was held by H. A. Yokum amounted to $1274.80, for the payment of which Theodore Koelling had pledged fourteen shares of his stock in the defendant bank. After his death the executrix recovered this stock by paying said note, she testifying that she was using the funds of the estate for the purpose, but her bank book indicates that she used her insurance money for the purpose of paying this note. She did not have the note, or any of the notes

or claims assigned to her personally, but paid them and secured their cancellation. She made no attempt by reason of such payments to become a creditor of, and present a claim against, the estate in the probate court.

"After obtaining these fourteen shares, Catherine Koelling on April 22, 1914, presented same, together with the remaining five shares, to the defendant bank, which took up the certificates, cancelled same and issued to her two new certificates in her name individually, one for fourteen and the other for five shares. The old certificate for fourteen shares which she surrendered was indorsed by her, and also bore the signature of Theodore Koelling. Thereafter she sold one share of the stock to W. H. Drunert for $165 and had the same transferred to him. Some months later she pledged the remaining eighteen shares to the defendant bank to secure a personal loan to her in the sum of $2259. Afterwards and in March, 1915, she sold the remaining eighteen shares of stock to Elgar Delventhal and others for a consideration of $165 per share. After the payment of her individual note, she received the difference in cash, amounting to about $400, and the shares were thereupon transferred by the defendant bank to Delventhal. A few days later some of the shares were transferred to other parties, who were directors in the bank. No order of the probate court was obtained authorizing any of these transfers of stock, and no order was obtained authorizing the executrix, Catherine Koelling, to sell the stock.

"The estate was never finally settled in the probate court. There was a semi-annual settlement filed on February 10, 1914, by which it appeared that there was a balance of $18 due Catherine Koelling as executrix on account of costs of court paid by her. She does not charge herself in this settlement with the amount inventoried, and nothing appears therein to indicate what disposition was made of the estate inventoried, including the nineteen shares of stock.

"At the August term, 1914, of the probate court the

executrix made proof of the publication of notice of final settlement, but no final settlement was ever in fact made. At the time the first transfer of stock was made (April 22, 1914) from Theodore Koelling to Catherine Koelling, the time for proving claims against the estate in the probate court had not expired. When the other transfers were made from Catherine Koelling to Elgar Delventhal and the other directors in March, 1915, the time for proving claims had expired.

"In August, 1917, more than two years after the transfer of the shares of stock, the plaintiff and the other children filed in the probate court a petition for partition in kind of the said nineteen shares of the capital stock of the defendant bank, and afterwards, in due time and after compliance with the provisions of the statute (Sec. 239, R. S. 1919), partition was made of such shares—five thereof being decreed to the plaintiff. Catherine Koelling waived notice in writing of this proceeding in the probate court and entered her appearance.

"Thereafter plaintiff made a demand on the bank to issue and deliver to him five shares of the said capital stock, and to pay to him the dividends earned and declared thereon since the 18th of March, 1915. The demand not being complied with, the present suit was instituted, with the result as heretofore stated.

"The defendant bank brings the record here for review and, among other claims, asserts the decree is erroneous, inasmuch as the evidence failed to show a breach of reasonable care and diligence on its part in transferring the stock to the name of Catherine Koelling, as she was the executrix of Theodore Koelling, deceased, duly appointed and acting under the will, and was also the sole beneficiary under said will and that under such conditions defendant bank was not negligent, but was justified in transferring the stock on its books to the name of Catherine Koelling, or as she directed. That under said will the stock was given to Catherine Koelling as a special bequest, and that the title to the stock vested in her as of

the date of the death of Theodore Koelling, and that she had the right to have it transferred to her. It is asserted that the will and the probate thereof furnished to the defendant sufficient and adequate authority to make the transfer of the stock. On the other hand, the plaintiff contends that the transfer was made by the defendant bank without any right or lawful authority and without the consent, authority or knowledge of the plaintiff, and by reason thereof the corporation is responsible to plaintiff, the true owner.''

I. Having in view the rule of "safety first" we have set out the facts in full as found by the Court of Appeals. The action is one in equity to compel the defendant bank to (1) issue certificates of stock as per an order of partition made in the probate court, and (2) to compel the payment of dividends thereon, or (3) the payment of the money value thereof.

As stated there were debts against the estate, but these never became lawful demands, because not probated. In the briefs and in the opinion it is stated that the wife paid these debts, even to the extent of using the life insurance left to her, and in an amount of $12,000. This to protect the good name of the husband. In the briefs it is further stated that the answer urged the payment of these debts, as a defense, in different forms. These special defenses were stricken out, so it is claimed. The opinion does not mention this fact. The opinion rules that these pretermitted heirs were entitled to have this stock divided and given to them in kind. They asked, however, that if such could not be done that they have its value, with dividends added. This, although the widow, the devisee in the will, had transferred the stock prior to the alleged partition. This, on the theory that the bank had been remiss in issuing new shares of stock in lieu of the old ones, notwithstanding the will. The real question lies within narrow bounds. That question

Division In Kind or Value.

may be thus framed: as to personal property are pre-termitted heirs entitled to their individual shares of the personal property in kind, or are they entitled only to recover in value their proportionate part of the estate from the devisee in the will, to whom the personal property was granted? This of course upon the idea that the personal property has been appropriated and used by the grantee, and is not in the estate. Several side issues are involved in this question, and of them all in following paragraphs.

It should be noted that the deceased left no solvent estate. The insurance was to the wife and hence no part of the estate. Including this bank stock his estate was worth little over $6000, and his debts over $12,000, over $1200 of which was secured by a pledge of fourteen shares of this stock.

II. Considering some of the side-lights in this case, it should be said that where the testator fails to mention in his will a child or children, or their immediate descendants if the child be dead, such testator dies intestate as to these pretermitted heirs. Of this rule there is no question. In the early case of Bradley v. Bradley, 24 Mo. l. c. 320, the rule is stated in this laconic language: "as to the children of the testator the will is a mere blank." However, there is nothing said in this case to the effect that the will itself is void *in toto*, although it is urged that this construction is given of the case in Burch v. Brown, 46 Mo. 441. In the Bradley Case the devise was to the widow, and real estate was involved. In such case without a will, valid against the heirs, the widow had only a dower interest. In the Burch Case the devise was to a stranger, without the right of dower, and real estate alone was involved. In the instant case personalty alone is involved, and the wife has an interest in such, under the law, along with the heirs. She is a distributee in the personalty, just as is the child or children. [Sec. 319,

*Pretermitted Heirs: Effect on Will.*

R. S. 1919; Howard v. Strode, 242 Mo. l. c. 219.]   In Howard's Case, FERRISS, J., said: "The wife, under that section" (now Section 319, supra), "is not a dowress, but a distributee." By the statute she gets the share of a child in personalty.

These cases we mention, because there is a marked difference between cases dealing with personal property and those dealing with real property. There is also a difference between a rank stranger (involved in Burch's Case) and a widow, who is a distributee, under the law, as to personal property. It is true that as to realty the Burch Case ruled that the stranger had no rights against the pretermitted heirs. But this is not this case. Here the wife was not only the legatee under the will, but a distributee irrespective of a will. But to get back to the first thought, i. e. that the mere omission of the children did not render the whole will void. First it was not so held in Bradley's Case. In fact the only case so holding is Burch's Case, supra, and there the legatee was a total stranger. There was no wife involved. The mere omission of the names of heirs (where there is a legal distributee named) does not render the will totally void. [Hill v. Martin, 38 Mo. l. c. 81; Schneider v. Koester, 54 Mo. l. c. 501; Dobschutz v. Dobschutz, 279 Mo. l. c. 124; Story v. Story, 188 Mo. l. c. 118.]

In the Hill-Martin Case, supra, in 28 Mo. l. c. 81, it is said:

"The legacies and devises cannot be treated as nullities, but the legatees or devisees would only be bound to refund their proportional parts. And in order that the equities of all parties might be properly adjusted, it would be necessary to resort to the mode pointed out in the thirty-third section. A child not provided for cannot defeat all the devises by claiming and recovering a share of each, but would only be entitled to contribution for a sum sufficient to make him equal to that which he would have been entitled to if there had been no will."

In the Schneider-Koester Case, supra, 54 Mo. l. c. 501, it is said:

"The will is not rendered invalid by reason of an omission of the testator to mention one or more of his children; such omission only produces an intestacy as to the interest of the omitted child, and such pretermitted child, or the descendants of such children, may proceed in the mode to recover their interests in the realty and personalty specified in the 47th section of the act."

The latest case cited by respondents is the Dobschutz Case, 279 Mo. l. c. 124, whereat WHITE, C., said:

"So far as they are concerned there is no will; he died intestate as to them. They are no more bound by the terms of the will in respect to their remedies, than they are in respect to their substantive rights.

"It has been held by this court that a pretermitted heir may maintain an action for partition of land disposed of by a will in which he was not mentioned or provided for; that is, he may 'assert his rights under the statute creating an intestacy as to him.' [Breidenstein v. Bertram, 198 Mo. l. c. 344; Vantine v. Butler, 250 Mo. l. c. 451.]"

This case goes no further than to rule that as to unmentioned heirs, the testator dies intestate. It does not rule the will void *in toto*. The Burch Case is the only case going so far, and it upon the theory that the legatee was a stranger in blood. Under the case law it can be safely ruled, that when the legatee would under the law be distributee, and thus not a mere stranger, the omission of the names of heirs in a will does not render it wholly void. The pretermitted heirs of course have rights, and the serious question is their remedy in a case like this case. Where real estate is involved, partition is a proper remedy because the dower of the widow can be admeasured, and the remainder partitioned in the one case. We have no realty in the present case.

III. We have thus gone into the validity of the will, because the opinion of the Court of Appeals, when read from its four corners, in effect holds this to be a void

will, because the testator's children had not been mentioned. In this the opinion, read as a whole, conflicts with all that line of cases ruling that the mere fact that there are pretermitted heirs does not invalidate the will *in toto,* but that the testator died intestate as to such heirs, which pretermitted heirs are entitled to contribution from those receiving property under the terms of the will. These cases we have cited, supra. Again the Court of Appeals says:

**Payment of Legacies.**

"And the fact that the will in the present case gave to the executrix power to sell the property of the estate after having bequeathed and devised it to her could not dispense with the necessity of complying with the statutes when it came to making sales of the personal property belonging to the estate. A testator has no power to dispense with the necessity of complying with the method of sale prescribed by the law, which was enacted for the benefit of the creditors, the distributees and legatees."

Later it says:

"The plaintiff being a child of the testator, and not named in his will, under the provisions of our statute (Sec. 514, R. S. 1919) the father died intestate as to the said child, and he was entitled to his proportionate part of the shares of stock. His right to the stock, of course, was subject to such claims and demands as might be properly presented to and allowed by the probate court against the decedent's estate. As heretofore stated, no such claims were allowed in this case. The fact that the will made a specific bequest of these shares to the widow did not operate to divest the plaintiff of such right, and afforded no protection to defendant in making the transfer to her individually, and from her to others, and by which transfers the shares were wholly lost to the estate."

Under this rule of law the testator is rendered powerless to confer upon his executor the power to sell personal property without an order of the probate court. This

clause shows the bent of the opinion on the validity of the will. There are divers other expressions pointing to the conclusion we reach as to the opinion as a whole upon this question. Another of which we have quoted above.

But the law announced is wrong. The will was not destroyed by reason of pretermitted heirs. The widow was properly executrix thereof, and by its terms. The administration was properly started under the terms of the will. This bank stock was a specific legacy to the widow under the will. Her act, as executrix in directing the bank to put the stock in her name, she being the legatee, was an act carrying out the will, and paying the specific legacy. The petition in this case recites that there were no claims, because the widow paid them. These pretermitted heirs were not even making claim. They were standing mute for several years, i. e. from 1913 to 1917. In this situation the executrix under Section 207, Revised Statutes 1919, had the right to have the transfer of the stock made to her in discharge of her legacy granted by the will. [Chandler v. Stevenson, 68 Mo. l. c. 453.] This case rules that an administratrix could not assign a note to one not "a creditor, grantee or distributee," but clearly indicates the right to transfer, under the statute, supra, to either a creditor, legatee or distributee. The old case of Stagg v. Green, 47 Mo. l. c. 502, whilst it holds that an executor can't act until he has given bond and qualified, yet it clearly indicates that after qualification he can follow the terms of the will, for in the opinion it is said:

"By necessary implication he is prohibited from acting as plainly as though the prohibition were direct. I can have no doubt that under our laws the executor, by virtue of being so named, has no power to intermeddle with the estate except under pressing necessity, and only so far as is necessary, until letters have been obtained, although if he shall so intermeddle and shall subsequently qualify, his letters will relate back and cover his former acts.

"The policy of the law is obvious, The executor is but a trustee; he receives nothing in his own right, but everything for the use of others. Before assuming the relation, before he is permitted to take possession of and dispose of property thus intrusted to him, he is required to give ample security for the benefit of those for whom he acts. If he were permitted to first dispose of the property, whether chattels or choses in action, the whole purpose of the law might be defeated. Creditors and legatees might be defrauded, and, if the executor were not responsible, would be without remedy. There is no security to them but to hold him absolutely disqualified to act until he has complied with the requirements of the statute."

The last sentence of this quotation we affirmed in Leahy v. Mercantile Trust Co., this day decided and reported in 296 Mo. 561. This case indicates that after qualification he (as trustee) can proceed to dispose of the estate as per the will, and especially is this true where the debts have been paid, as averred in this case. Under such circumstances creditors are out of consideration, and there is nothing left except legatees and pretermitted heirs, if there be such. To the same effect as the Chandler Case, supra, are State to use of Wolff v. Berning, 74 Mo. l. c. 96, and Stagg v. Linnenfelser, 59 Mo. l. c. 341. Discussing our statute and the common law as to the powers of an executor this last case at page 342, says:

"As declaratory of the common-law right of an executor or administrator to dispose of the personalty of his decedent, such legislative permission would obviously be devoid of meaning. This being the case, the section referred to, whatever may be thought of its possessing sufficient comprehensiveness to embrace bills of exchange, may be safely and fairly assumed to be restricted in its operation as to notes and bonds, and to preclude their transfer, except where the statutory exigency arises, *or the will under which the executor acts and is qualified, so provides.*"

The statute has been broadened since this opinion to include stocks. [Sec. 207, R. S. 1919.] So that at the time of the transfer of these stocks to the legatee, the widow, the debts had been paid in double the amount of the estate, and the executrix had left the duty to carry out the will in discharge of the legacies. This she did by having the stock transferred to herself. The opinion, portions of which we have quoted, not only proceeds upon the false theory that the will was void, but upon the further false theory that the executrix could not pay or discharge a specific legacy, under the facts of this case. In this it contravenes the cases, supra.

IV. It is true that the bank was in position to have knowledge of the situation at the time. But of what facts did it have knowledge? They were (1) that there was a will in which there was a specific bequest of this stock to the wife, (2) that the wife was discharging or had discharged all the debts of the estate, to the end that there was or would be no creditors, (3) that the will gave the wife, as executrix, the full power of disposition of all property, and (4) that no claim from pretermitted heirs were being urged, if it can be said that the bank ever had knowledge of pretermitted heirs. In our view of the case the latter is of but little importance.

At the time of this transfer to the legatee there were no claims from these pretermitted heirs, but the statute fixed their remedy whenever they did appear. [See Sec. 514, R. S. 1919.] After stating the rights of the pretermitted heirs, this statute says in closing, "and the same shall be assigned to them, *and all the other heirs, devisees and legatees* shall *refund* their proportional part."

This section was Section 4611, Revised Statutes 1899, and dealt with by LAMM, J., in Story v. Story, 188 Mo. l. c. 118, supra, wherein it was ruled that the pretermitted heirs had their remedies "without striking the will down except *pro tanto*." The statute aforesaid seems to contemplate the previous payment of legacies or de-

vises of personal property, because it speaks of refunding.

The remedies of partition and ejectment referred to by Fox, J., in Breidenstein v. Bertram, 198 Mo. l. c. 345, and by LAMM, J., in Story v. Story, 188 Mo. l. c. 118, clearly refer to real estate. So too the same language in McCracken v. McCracken, 67 Mo. 590, wherein it is said that under certain circumstances one of three named remedies might be used. Under given circumstances ejectment might be used. Under others partition might be used. These evidently relate to real estate. Then under given circumstances contribution by suit in equity might be used. The instant suit is neither. It is an action against the bank, and not against legatees or distributees. The bank's defense is that under the will the widow, as a specific legatee of this stock, got title to the shares when she directed the bank to transfer them to her individually. That having thus gotten the title, her later transfers were valid, and that the remedy of plaintiff was for contribution under the statute, and not partition in the probate court. This because there was no property belonging to the estate to be partitioned in the probate court. It had legally passed from the estate first to the legatee and then from her to others. Under the facts of this case, we believe that this is the law as indicated by the decisions, supra, and that the bank was not remiss as to plaintiffs in the three several suits. In holding it to be remiss the opinion conflicts with the authorities supra, and the judgment and opinion should be quashed.

It is so ordered. All concur, except *James T. Blair* and *Higbee, JJ.*, who dissent; *Elder, J.*, concurs in all except what is said as to the Leahy Case.